## MILLS v. BOARD OF EDUCATION OF ANNE ARUNDEL COUNTY et al.
### No. 170.

District Court, D. Maryland.
Nov. 22, 1939.

Thurgood Marshall, of New York City, and Leon A. Ransom and William H. Hastie, both of Washington, D. C., for plaintiff.

Noah A. Hillman, of Annapolis, Md., for Board of Education of Anne Arundel County.

William C. Walsh, Atty. Gen., of Maryland, and H. Vernon Eney, Asst. Atty. Gen., of Maryland, for State of Maryland, taking no active part.

CHESNUT, District Judge.

This case is a natural sequel to that of Mills v. Lowndes et al., in this court, 26 F.Supp. 792. In that case the same plaintiff,

who is a colored school teacher employed by the Board of Education of Anne Arundel County, of the State of Maryland, sued the *State Board of Education* to secure an equalization of salaries paid to white and colored teachers in the public schools of Maryland. On motion of the defendants after extended argument, the complaint was dismissed for various reasons stated in the opinion, importantly including the absence from the record as a defendant of the County Board of Education. In the present suit the plaintiff has sued the *County Board* and its superintendent alone. Under the practice recently established by the new federal rules of civil procedure the defendants have filed third-party complaints against the *State* Board of Education and the County *Commissioners* of Anne Arundel County as third party defendants, and the latter have moved to dismiss these third party complaints.

◼ The complaint in this case calls attention to the Maryland statute which provides a *minimum* scale of salaries for *white* teachers, graduated to professional qualifications and years of experience, and a separate statute providing a *lower minimum* for teachers in *colored* schools; and alleges that in practical application only white teachers are employed in white schools and colored teachers in colored schools; and that the latter are paid less in Anne Arundel County than white teachers solely on account of their race or color. The plaintiff contends that this constitutes an unconstitutional discrimination which is prohibited by the equal protection clause of section 1 of the 14th Amendment to the Federal Constitution, U.S.C.A. The prayer for specific relief is that "the court issue a permanent injunction forever restraining and enjoining the defendants and each of them from making any distinction solely on the grounds of race or color in the fixing of salaries paid white and colored teachers and principals employed for the public schools of Anne Arundel County, and from paying to the plaintiff or any other colored teacher or principal employed by them a less salary than they pay any white teacher or principal employed by them and filling an equivalent position in the public schools of Anne Arundel County". By an amendment to the original complaint the plaintiff also seeks a declaratory decree (under 28 U.S.C. § 400, 28 U.S.C.A. § 400) "that this court adjudge and declare that defendants' policy complained of herein, in the respects it is maintained and enforced pursuant to state statutes as well as in the respects it is maintained and enforced in the absence of controlling statutes, violates the due process and equal protection clauses of the 14th Amendment of the Constitution of the United States; and sections 41 and 43 of Title 8 of the United States Code." [1]

A precise understanding of the Maryland statutory scheme of public education is essential to a considered opinion on the question presented by the pleadings and testimony in this case. The statutory provisions were discussed at length in the former case, 26 F.Supp. 792 (to which reference is hereby made) and need not now be repeated. The opinion in the former case was filed on March 1, 1939. The only subsequent legislation upon the subject is the Maryland Act of 1939, Ch. 502, approved May 11, 1939 and effective September 1, 1939, which established a new state minimum salary schedule for white teachers, setting up therein a single salary schedule based on preparation and experience, to replace the former position-experience schedule. The general effect of the Act was to somewhat increase the minimum salary schedule for white teachers, but without any increase in the previously established minimum salary for teachers in colored schools.[2] Attention should also be called to the Maryland Act of 1937, Ch. 552, effective September 1, 1939, which made the school term for colored children of equal duration to that for white children, there previously having been some disparity in the respective terms, those for colored children being generally a month or two shorter than those for white children. Hereafter for both it is required that the schools be kept open

[1] As plaintiff has not prayed for an interlocutory injunction a three-judge court was not authorized by U.S.C. Title 28, § 380, 28 U.S.C.A. § 380. Stratton v. St. Louis, Southwestern R. Co., 282 U.S. 10, 51 S.Ct. 8, 75 L.Ed. 135; McCart v. Indianapolis Water Co., 302 U.S. 419, 58 S.Ct. 324, 82 L.Ed. 336.

The jurisdiction of the court in this case is based on 28 U.S.C. § 41(1) and (14), 28 U.S.C.A. § 41(1, 14).

[2] See, also, Act of 1939, Ch. 514, increasing from 47 cents to 51 cents the county tax levy for school purposes as a condition to the benefit of the "Equalization Fund" discussed in the former case, and hereinafter also mentioned.

not less than 180 actual school days, or nine months in each year.

The historical development of Maryland legislation with respect to the comparative salaries for white and colored teachers is important in this case. The legislation is said to be unique in that while no *maximum* salary is prescribed for payment by the several County Boards of Education, there is a difference which has existed for many years in the minimum requirements with respect to white and colored teachers' salaries, by virtue of which the minimum· for white teachers has always been very materially higher than the minimum for colored teachers. The rating of all teachers both white and colored is determined and certified to the County Boards by the State Board, and is based on uniform requirements. The salaries for white teachers (and to lesser extent for colored teachers) are graduated to professional qualifications and years of experience, so that the schedules are somewhat complex; but for simplicity of statement and for purposes of comparison it will· be sufficient to take the case of white and colored teachers respectively who have a first grade rating and nine years or more experience. In 1904 the first minimum salary act for white teachers (there being none at all for colored teachers prior to 1918) prescribed a minimum for white teachers of $300 per annum; in 1908 and 1910 this was increased (for a teacher in white elementary schools having a first class rating and more than eight years' experience) to $450; in 1916 to $550; in 1918 to $600; in 1920 to $950; in 1922 to $1150; and in 1939 (on a slightly different basis as to professional qualifications and experience), to $1250, and, if the teacher held an academic degree, to $1450. By comparison the minimum for colored elementary teachers of similar rating has been fixed much less. Their salaries have been fixed by statute not on a yearly but a monthly basis, and for some of the time heretofore, for seven months of the year. In 1918 the minimum was $280 per year, increased in 1920 to $455 per year; in 1922 to $595; and in 1939, (by reason of increase in the duration of the school year) to $765 per year. At the present time, therefore, the respective minima are $1250 for white teachers and $765 for colored teachers, with comparable professional qualifications and experience.

The plaintiff contends that the statutes are unconstitutionally discriminatory on their face and should be held generally invalid. On the other hand it is pointed out in defence of the statutes that they constitute *minimum*, not *maximum*, salaries, and that, while the minimum for white teachers is higher than the minimum for teachers in colored schools, the statutes affecting the latter do not expressly apply to colored teachers as such but only to all teachers in colored schools whether white or colored. It is also to be noted, as was pointed out in the opinion in the former case, that the County is the unit for public education in the State; that the County Boards of Education have full authority for discretion as to the actual amount to be paid to their teachers both white and colored, and are entirely at liberty, in co-operation with the County Commissioners of the Counties respectively, to pay *higher* salaries than the minimum fixed by law; and that in fact several of the twenty-three counties of the State, and Baltimore City, do pay *equal* salaries to white and colored teachers of equal professional qualifications and experience. It is clear enough, therefore, that in practical application the statutes of themselves do not *necessarily* require actual discrimination in practice between white and colored teachers on account only of their race or color.[3] It is, however, equally clear that the statutes do permit the County Boards to make such discrimination, and there is ample evidence that in most of the counties of the State (including Anne Arundel County) a very substantial difference between the pay schedules of white and colored teachers has always existed. Thus it is shown that the annual, average salary for white and colored teachers in elementary schools in the Maryland Counties for the period of 1921 to 1939 is in the ratio of nearly two to one in favor of the white teachers. In 1921 the comparative figures were $881 for white teachers and $442 for colored; in 1930 the respective figures

---

[3] A nondiscriminating minimum salary scale for teachers was held constitutional in Bopp v. Clark, 165 Iowa 697, 147 N.W. 172, 57 L.R.A.,N.S., 493, Ann.Cas. 1916E, 417; see, also, School City of Evansville v. Hickman, 47 Ind.App. 500, 94 N.E. 828. At least 20 states have some form of minimum salary laws for teachers. See "Minimum Salary Laws for Teachers", Nat. Ed. Assoc. Wash. D. C. Jan. 1937.

were $1199 and $635, and in 1931, $1314 and $848. It is, however, fairly to be noted that in recent years the disparity has gradually been reduced. The average increase in salary over the nineteen-year period has been $433 for white teachers and $406 for colored teachers, or a percentage of increase of 49% for the white teachers and 92% for the colored teachers.

The controlling question in the case, however, is not whether the statutes are unconstitutional on their face, but whether in their practical application they constitute an unconstitutional discrimination on account of race and color prejudicial to the plaintiff. We must therefore look to the testimony in this case to see how the statutes have been applied in Anne Arundel County. In the first place we find that for some years past at least the County Board of Education of Anne Arundel County, in fixing the salaries of white and colored teachers, has paid to both classes more than the minima required by the general statutes. In 1937 the County Board of Education fixed the scale of salaries for white teachers, in the case of a teacher who has the qualifications and experience above mentioned, at $1250 (the comparable statutory minimum being then $1150); and for colored teachers at $700, the general minimum being $680. These figures are for *teachers* in elementary schools. The plaintiff, however, is the *principal* of a colored elementary school at Camp Parole, Anne Arundel County, Maryland, with four teacher assistants and he is now in his eleventh year of teaching experience. The state minimum statutes do not prescribe the salary for the position of a principal of a colored elementary school but do for white principals of elementary schools, the minimum for the latter (where the principal has the same qualifications as the plaintiff, and has two to four assistants) being $1550. The county scale fixes the minimum salary of a white principal of a comparable school at $1550, and for a colored principal at $955; but in practice the County Board in many cases actually pays higher salaries to the principals of schools, in consideration of particular conditions and capacities of the respective principals. Thus the plaintiff's salary for the current year has been fixed at $1058, or $103 more than the minimum, and in the case of three white principals, mentioned in the evidence, the salary is $1800 per year, or $250 more than the minimum. The defendants contend that the materially higher salaries of these three white principals of schools comparable in size to that of which the plaintiff is a principal is due to the judgment of the Board that the three white principals have superior professional attainments and efficiency to that of Mills; [4] but it is to be importantly noted that these personal qualities, while explaining greater compensation to the particular individuals than the minimum county scale for the particular position, do not account for the difference between $1058 only received by Mills and the minimum of $1550 which by the County scale would have to be paid to *any* white principal of a comparable school. Or, in other words, if Mills were a white principal he would necessarily receive according to the County scale not less than $1550 as compared with his actual salary of $1058.

The plaintiff has filed this suit not only individually but on behalf of other colored teachers in Anne Arundel County including those teaching in colored high schools. By the Anne Arundel scale the salaries of teachers and principals of white *high* schools is somewhat higher than that for the white elementary schools, the difference ranging from $300 to $400; and there is also a differential in favor of high school teachers in the scale for the colored schools, the difference in favor of the high school teacher being about $300. There is also a salary differential between elementary and high school teachers in colored schools by the state minimum statute. It is not necessary to state further details of the high school schedules in this respect, but

---

4 The defendants also contend that the $1800 compensation of these three white principals (that is $250 more than the minimum county scale) is in part justified by the fact that their particular schools are what are called consolidated schools and that the bus transportation of pupils to the school, the busses arriving and leaving at different times, requires the principals of these schools to have approximately 1¾ hours additional attendance per day at school over and above the time required for Mills. It appears, however, that what is required in this respect is additional time from the teachers of the school to receive and discharge pupils rather than from the principal alone. The teachers receive no additional compensation for their extra time which seems to be substantially merely an incident of their general duties.

the case of Frank E. Butler, a colored principal of the Bates High School at Annapolis may be taken for illustration. He received an A.B. degree from Morgan College in 1910 and has been continuously employed as a teacher in or principal of a colored school in Anne Arundel County for twenty-nine years. He now receives an annual salary of $1600. A white principal of a comparable white high school would receive a minimum of $2600.

I also find from the evidence that in Anne Arundel County there are 243 white teachers and 91 colored teachers; but *no one* colored teacher receives so much salary as *any* white teacher of similar qualifications and experience.

■ The crucial question in the case is whether the very substantial differential between the salaries of white and colored teachers in Anne Arundel County is due to discrimination on account of race or color. I find as a fact from the testimony that it is. Some effort has been made by counsel for the defendants to justify the difference in salaries on other grounds. Thus it is said that until recently the school term was somewhat longer in the white schools than in the colored schools; and it is also said that the colored teachers are less efficient than the white teachers because the results of examinations in the white and colored schools in Anne Arundel County, when the papers are marked by outside impartial educators, show a substantially lower average for colored pupils than for white pupils. But in opposition to these contentions it is to be noted that the school term has now been made equal for white and colored schools; and the lower grade in examinations attained by colored pupils is readily explainable on other grounds than the alleged inefficiency of colored teachers.[5] The contentions of the defendants in this respect seem really unsubstantial when the whole problem is viewed historically in the light of the Maryland law and general state practice on the subject, and particularly in the light of the actual practical application of the Maryland statutes in Anne Arundel County. And indeed any controversy over the fact would seem to be ended by the testimony of the defendant, Fox, who is Superintendent of Education in Anne Arundel County and an executive officer of the County

School Board, and that of Mrs. McNelly, the financial secretary of the Board, both of whom substantially admitted that the discrimination in the county schedule of minimum salaries for white and colored teachers respectively was at least largely influenced by the fact of race or color.

■ I conclude therefore from the pleadings and testimony that the plaintiff has established that he as a colored teacher is unconstitutionally discriminated against in the practice of his profession by the discrimination made between white and colored teachers by the County School Board of Anne Arundel County; and that he is entitled to an injunction against the continuation of such discrimination to the extent that it is based solely on the grounds of race or color, and that he is also entitled to a declaratory decree to the effect that such unlawful discrimination exists; but I do not think the plaintiff is entitled to an injunction to the extent prayed for in the concluding clause of the prayer for an injunction reading: "and from payment to the plaintiff or any other colored teacher or principal employed by them a less salary than they pay any white teacher or principal employed by them and filling an equivalent position in the public schools of Anne Arundel County". It does not follow that because the positions are equivalent the particular persons filling them are necessarily equal in all respects in professional attainments and efficiency; and some range of discretion in determining actual salaries for particular teachers is entirely permissible to the County Board of Education. If the County Board continues to observe the minimum state statute for salaries for white teachers, it is difficult to see how it would have legal justification for paying colored teachers less than the *minimum* required for white teachers of similar standard professional qualifications and experience, as such discrimination would seem to be clearly based solely on race or color. But the Board has full discretion in its judgment to pay more than the minimum to any white or colored teacher who merits it, provided the discrimination is not solely on account of race or color.

I do not find it necessary in this case to expressly decide that the state minimum statute for white teachers is necessarily on its face unconstitutional, because it is

[5] See "Special Problems of Negro Education", by Doxey A. Wilkerson, Staff Study No. 12, prepared for the Advisory Committee of Education, published by the Government Printing Office, Washington, 1939, pages, 8, 14, 22, 24.

the county practice rather than the mere terms of the statute which prejudices the plaintiff. There are practical advantages to the County School Board in observing the state statute, as it thereby becomes entitled to participate in the so-called Equalization Fund provided by the State as fully explained in the opinion in the former case. That is to say, it will be less expensive to Anne Arundel County to raise the colored teachers' pay to the minimum of the state statute for white teachers than to fail to comply therewith and lose the benefit of the Equalization Fund. The evidence shows that, to bring the colored teachers' pay up to the statutory minimum for the white teachers, will cost the County only $45,000, while at the present time it is receiving about $100,000 from the Equalization Fund. To raise this extra $45,000 will mean seven or eight cents additional on the general County tax rate for school purposes. I am not unmindful of the difficult financial position which is thus created for the County, as has been so forcibly urged by counsel. The County has a present very high tax rate of about $2.30 per .$100 of assessed valuation of property. It is also true that the problem presented by this case is not peculiar alone to Anne Arundel County, but exists to a more or less extent in many other counties of the state; and indeed the problem is not limited to the State of Maryland, but exists in many southern states. [6]

Nor has Anne Arundel County been unmindful of or indifferent to its problem. As previously noted, it does not limit the pay of its teachers either white or colored to the minima of the state statutes. In January 1938 the Board passed a resolution expressing sympathy with the proposition· that the salaries of white and colored teachers should be equalized by state law, and expressing regret that no immediate action could be taken by the Board toward that result in view of the county's finances, but indicating an intention to soon make some increase in the rate of pay for the colored teachers. For the scholastic year 1939–40 it has increased its budget for colored teachers' salaries from $66,000 to $74,000, which is a much larger proportionate increase for colored teachers than for white teachers, the increase for the latter being from $210,000 to $218,000. In January 1939 it voluntarily increased by ten per cent. the salaries of colored school·teachers for the remaining months of· the scholastic year 1938–39. That percentage increase was not continued for the current year; but in October of this year the Board proposed to a representative delegation of county colored school teachers that it would for the succeeding scholastic year and for each year thereafter increase their salaries by an additional·ten per cent. until they approximated the state minimum for white teachers, it being estimated that it would require four or five years to bring about such equalization, on the condition that the present suit be withdrawn; but this proposition was declined by the plaintiff whose action in the matter had the support of all the colored teachers of the county. But these financial considerations cannot control the supreme law of the land as expressed in the 14th Amendment, and the implementing Acts of Congress which must be controlling here.

Some objections by the defendants to the relief asked by the plaintiff were considered in· the former case. Thus it is argued that the plaintiff is not entitled to complain because he is a public employe; in the former opinion the view was taken that he has a sufficient status as a qualified school teacher by profession and occupation to have the question determined. Again it is argued that an injunction should not be granted because there is an adequate remedy at law by mandamus in the state court. This also was discussed in the former case, but in a somewhat different connection. The objections to an injunction which were there held valid, do not exist here; and Title 8, § 43 of the United States Code, 8 U.S.C.A. § 43, expressly authorizes an injunction as a possibly appropriate remedy in this class of cases.

The County Board of Education also contends that if the plaintiff is entitled to the relief prayed for in this case, it has a remedy over against the State

[6] See Special Problems of Negro Education by Doxey A. Wilkerson, Staff Study No. 12, prepared for Advisory Committee on Education, Government Printing Office, Washington, 1939; also Progress and Problems for Equal Pay for Equal Work, published by the National Education Association, 1201 16th St., N. W., Washington, D. C. June 1939, p. 24; and Minimum Salary Laws for Teachers, published by the same Association January 1937.

Board of Education and the County Commissioners of Anne Arundel County. But for the reasons fully stated in the opinion in the former case, I do not find or conclude that there is any judicial remedy, as distinct from legislative amendments, to which the defendants are entitled against the State Board of Education and the state officers in charge of the Equalization Fund, or any present remedy over against the County Commissioners of Anne Arundel County. The applicable legal procedure is that the County Board of Education will have to prepare a new budget for the next scholastic year, and the County Commissioners, to the extent required by the statutes, will thereafter have to fix the necessary county rate for taxation. I conclude therefore that the third party complaints must be dismissed.

Counsel for the plaintiff are also not unmindful of the financial problems which will necessarily be faced by the County Board of Education and County Commissioners of Anne Arundel County by reason of the injunction to be issued in this case, and have expressed willingness to have the operative effect of the injunction postponed until the preparation of the next annual budget by the County School Board; and therefore the judgment to be entered will conform to this agreement.

The findings of fact and conclusions of law expressed in this opinion are intended to be in compliance with Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c; but if counsel on either side desire separate and more explicit findings of fact they can be prepared and submitted for consideration. As already stated, the controlling issue of fact is whether there has been unlawful discrimination by the defendants in determining the salaries of white and colored teachers in Anne Arundel County solely on account of race or color, and my finding from the testimony is that this question must be answered in the affirmative, and the conclusion of law is that the plaintiff is therefore entitled to an injunction against the continuancce of this unlawful discrimination. I wish to make it plain, however, that the court is not determining what particular amounts of salaries must be paid in Anne Arundel County either to white or colored teachers individually; nor is the Board in any way to be prohibited by the injunction in this case from exercising its judgment as to the respective

amounts to be paid to individual teachers based on their individual qualifications, capacities and abilities, but is only enjoined from discrimination in salaries on account of race or color.

Counsel, after conference between themselves, can submit the appropriate form of judgment.