**FREEMAN et al. v. COUNTY SCHOOL BOARD OF CHESTERFIELD COUNTY et al.**

**SMITH et al. v. SCHOOL BOARD OF KING GEORGE COUNTY, VA., et al.**

**ASHLEY et al. v. SCHOOL BOARD OF GLOUCESTER COUNTY et al.**

Civ. A. 644, 631, 175.

United States District Court
E. D. Virginia, Richmond Division.

April 7, 1948.

Supplemental Findings of Fact July 29, 1948.

Hill, Martin & Robinson, of Richmond, Va., for plaintiffs.

Williams, Mullen & Hazelgrove, of Richmond, Va., and M. A. Cogbill, of Chesterfield Courthouse, Va., for defendant County School Board of Chesterfield County and others.

Goolrick & Ashby, of Fredericksburg., Va., for defendant School Board of King George County, Va., and others.

Charles E. Ford, of Newport News, Va., and DeHardit & Martin, of Gloucester, Va., for defendant School Board of Gloucester County and others.

HUTCHESON, District Judge.

These three cases involve charges that the school boards of Chesterfield, King George and Gloucester Counties have discriminated against the plaintiffs on account of their race and color in violation of the Fourteenth Amendment to the Constitution of the United States.

The plaintiffs in case No. 644 are colored school teachers employed by the School Board of Chesterfield County, who claim that by reason of their race and color they are paid a salary less than that paid comparable white teachers employed by the Board of that County.

Cases Nos. 631 and 175 involve plaintiffs who are colored pupils in the public schools and the parents, next friends and guardians of colored pupils in King George County and Gloucester County, respectively. The complaints in those cases are similar in substance and allege that the school boards of those counties have discriminated against the plaintiffs on account of their race and color in that the public schools maintained for the colored children are greatly inferior in construction, equipment and facilities, instructional personnel, libraries and transportation service to those provided for the use of white children.

While the factual issues presented in cases Nos. 631 and 175 differ from case No. 644, the legal questions involved are the same.

The legal principles applicable to the instant cases have been exhaustively set forth in numerous decisions of the Courts. Two of the leading cases from this Circuit are Alston et al. v. School Board of the City of Norfolk et al., 4 Cir., 112 F.2d 992, decided June 18, 1940, and Mills v. Board of Education, D.C., 30 F.Supp. 245, from the District of Maryland, decided November 22, 1939, by Judge Chesnut. Also applicable are the views expressed in Reynolds v. Board of Public Instruction for Dade County, 5 Cir., 148 F.2d 754, and Morris v. Williams, 8 Cir., 149 F.2d 703. While it is true that those cases involved alleged discrimination with respect to salaries of colored teachers, there can be no serious contention to the effect that the principles there set forth do not apply with equal force to discrimination in providing inadequate facilities. Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208; Sipuel v. Board of Regents of the University of Oklahoma, 332 U.S. 631, 68 S.Ct. 299, 92 L.Ed. ——.

The legal principles are so well settled by the cases cited and the long line of decisions of other courts that I do not deem it necessary to enter into a discussion of the law. No doubt exists that the governmental authorities of the state may not discriminate against any person or class on account of race or color. Missouri ex rel. Gaines v. Canada, supra; Sipuel v. Board of Regents of the University of Oklahoma, supra. It follows that when a state, as has Virginia, provides at public expense free educational opportunities for its children, those provided for members of one race must be of substantially the same type as those provided for members of another race. In view of this the only real controversy relates to the factual situations presented in specific cases.

The facts concerning the three actions will be separately discussed.

Arthur M. Freeman et al. v. County School Board of Chesterfield County et al.— Richmond Civil Action No. 644

Prior to 1941, the defendant school board maintained separate salary schedules for white and colored teachers and principals, under which the salary scale for colored teachers was substantially less than that of the white teachers. In that respect the situation in Chesterfield County prior to 1941 was almost identical with the facts in the Alston case. In 1940 the salary of each colored teacher was increased in the amount of $100 per year as a result of protest by colored teachers and other citizens of the county. Thereafter the school board abolished the separate salary schedules and established a schedule applicable to all teachers of the county, in which no reference is made to the race or color of the teacher and upon its face the schedule applies to all teachers alike.

A further controversy arose in 1946, at which time the school board took the position that no discrimination existed. This action was subsequently filed.

The salary schedule in effect for 1946-1947 fixes minimum salaries for various positions ranging from $1250 to $1900 per annum. It is practically conceded that prior to 1941 discrimination existed. Therefore the question presented is whether discrimination is at present practiced and is likely to continue.

Numerous statistics were filed in evidence. It is shown that for the years 1942-43 and 1945-46 no white teacher received less than the highest salary received by a colored teacher. For the year 1946-47 only 9% of the white teachers received salaries lower than the highest salary paid any colored teacher.

While it is true that the salaries paid colored teachers have been consistently increased, those paid white teachers have increased also. 96% of the white teachers received salaries above the minimum level set for the salary schedule, whereas only 36% of the colored teachers received salaries above the minimum. 91% of the white teachers received salaries equal to or higher than the maximum paid colored. There appears during this period a consistent increase in the number of colored teachers holding degrees. In 1943-44 the percentage was 39 for colored and 35 whites. In 1945-46, 52% of the colored teachers held degrees compared with 27% of white teachers. In 1946-47 the percentage of the colored teachers remained the same as compared with 29% for white teachers. The average salaries for 1947-48 are as follows:

| | |
|---|---|
| White male principals | $3625.00 |
| Colored male principals (only one) | 2300.00 |
| White female principals | 2413.12 |
| Colored female principals | 1829.00 |
| White male high school teachers | 2508.33 |
| Colored male high school teachers | 1850.00 |
| White female high school teachers | 1969.92 |
| Colored female high school teachers | 1920.00 |
| White male elementary teachers | 2600.00 |
| White female elementary teachers | 1939.50 |
| Colored female elementary teachers | 1769.79 |

There are four white male principals, whose salaries range from $2550 to $4550. There are eight white female principals, whose salaries range from $2125 to $3080. The salary range of the thirteen colored female principals is from $1650 to $2000, only two of them being in the higher bracket. One of those has had twenty-three years' experience all in Chesterfield County, and the other has had twenty-one years' experience, sixteen being in the county. The lowest paid white female principal has had twenty-three years' experience, twelve being in the county. The salary range of the one hundred white female elementary teachers is from $1700 to $2125. There is only one white male elementary teacher and his salary is $2600. There are no colored male elementary teachers, but the twenty-four female colored elementary teachers received from $1700 to $1900. While there is, of course, a variation as to the length of teaching experience and employment in the county system, the disparity is not sufficiently great to deserve consideration. There is only one colored male high school teacher and his salary is $1650. There are six white male high school teachers, one of whom is paid $1900, one $2250, one $2550, two $2750, and one $2850. There is one white female elementary supervisor, whose salary is $3350, and one colored female elementary supervisor, whose salary is $2800. The rating of the various teachers is suggested by the Division Superintendent and adopted by the Board. The Superintendent testified that in making his recommendations he takes into consideration the factors set out in the schedule and endeavors to give consideration to the qualifications of the various individuals based upon his knowledge and observation of the teachers, a considerable number of whom have been employed by the county for many years. Upon its face the test provided by the schedules appears fair and reasonable and a practical manner of determining qualifications. At the hearing I was favorably impressed with the arrangement. However, upon an analysis of the facts I have reached the conclusion that the test as applied is not free of discrimination. There

are employed in the school system 195, members of the instructional personnel, not including two elementary supervisors and one visiting teacher. The Superintendent does not claim to spend a great deal of time in the company of any of the teachers. There is no method of conducting examinations and rating the teachers such as is described in the case of Reynolds v. Board of Instruction for Dade County, supra, but upon the contrary the entire responsibility is placed upon one person, the Division Superintendent, who has at best a difficult and trying position in discharging the many other duties devolving upon him.

█ Upon the whole, it appears from the evidence that there is a discrimination existing in Chesterfield County between salaries paid white and colored teachers. The lower salaries consistently paid the colored teachers over a period of years, coupled with the admitted discrimination which existed prior to 1941, lead me to the conclusions that the discrimination existing is due solely to race and color of the plaintiffs.

A declaratory judgment and injunction in accordance with the views here expressed will be entered.

Margaret Smith, an infant, by Henry Smith, her father and next friend, et al. v. School Board of King George County, Virginia, and T. Benton Gayle, Division Superintendent—Richmond Civil Action No. 631

At the trial of this case considerable evidence was introduced concerning the buildings, facilities and equipment furnished the white children as compared with those furnished the colored children. There are a number of school buildings provided for the white children and a number for the colored children. It would appear that some of the buildings occupied as elementary schools by the white children are about on a par with those furnished the colored children. For example, there does not seem to be any marked difference between the Madison white school and the Lamb's Creek colored school, either as to interior or exterior. On the other hand, the Shiloh elementary white school appears in a marked degree superior to the Welcome elementary colored school. The white elementary school at King George is obviously superior to the colored elementary school located at the King George Training School.

There are only two high schools in the county, the one for white children at King George and the King George Training School for colored children. The greatest difference appears to be between these two. The fact that the King George School is constructed of brick while the Training School is frame, is not of itself material. Along with the other evidence in the case there was a number of photographic exhibits, a casual look at which clearly shows a marked difference in the appearance and construction of the two buildings from an exterior view. With respect to the interior the evidence discloses that the King George school has running water, modern toilet facilities, a central heating plant, a comparatively modern cafeteria and a gymnasium. The Training School has outside toilets, a cafeteria greatly inferior to the one at King George, no gymnasium and no central heating plant, the rooms being heated by stoves.

The evidence shows that the library, laboratory and laboratory equipment furnished the white children are superior to those provided for the colored children. While there was some uncertainty in the evidence as to the value of the books in the libraries of the respective schools, it is clear that for the years 1943-46, inclusive, there were at least four times as many volumes in the white library as in the colored. It does not appear that there was any such equipment in the elementary schools, either white or colored, but King George high school had laboratory equipment for the years 1943 through 1946 valued at approximately $2500, while the Training School (colored high) had no laboratory equipment worthy of mention. There appears an inequality in the type of classes offered to the white children and those offered the colored, in that some classes taught in the white high school are not offered at all in the colored high school. It is apparent that certain science classes can not be offered advantageously

in the colored school because of a lack of equipment and that certain business classes can not be offered there to advantage for the same reason.

While the values of the sites and buildings used for school purposes do not necessarily determine the value of the instruction received, it does throw some light upon the question involved. In annual reports the State lists the following valuations for the sites and buildings in King George County: The 1943-1944 report gives the value of sites and buildings used for white schools to be $236,000, and of furniture and equipment to be $12,000. For the same year the value of sites and buildings used for colored schools is placed at $18,000, and furniture and equipment valued at $3,000. The figures for this particular year, however, are to be considered in light of the fact that one of the buildings and equipment included is a school building erected in King George County by the Federal Government for white children and owned by the Government. This particular building is not included in the reports for subsequent years and therefore the later reports more accurately reflect the situation with respect to values.

The report for 1944-1945 places the valuation of $101,000 on buildings and sites and $12,000 on furniture and equipment used for white children, against $22,200 for buildings and sites and $3,000 for furniture and equipment provided for colored. For that year the school enrollment consisted of 744 white children and 461 colored children.

The 1945-1946 report gives a value of white buildings and sites of $102,173 and of furniture and equipment therein of $13,500. Compared with this are the colored school buildings and sites valued at $24,200 and furniture and equipment of $4,000. The school population that year was 797 white as compared with 454 colored.

With respect to the allegations of the complaint that the plaintiffs are discriminated against because the King George Training School is not an accredited high school while the King George white school is accredited, it is my view that this question is so closely interwoven with the situation respecting buildings, equipment, facilities and other related matters as to be practically covered by what has been said.

There is an allegation respecting discrimination in salaries between the white and colored teachers, it being alleged that such discrimination results in less experienced and qualified teachers being employed to instruct the colored children. It is to be borne in mind that this is not an action concerning salary discrimination as such by the teachers, but an allegation by the children of a lack of qualified teaching personnel. There was not a great deal of evidence introduced upon this question and I do not feel in a position to pass upon the question of whether a discrimination exists in respect to salaries as such. That question is not involved here but in my opinion the evidence fails to show that the plaintiffs are furnished inexperienced, unqualified teachers.

It is not the function of the Court, nor within its power to dictate to the school authorities what type of buildings and equipment shall be provided nor what courses of instructions should be offered. Mills v. Board of Education of Anne Arundel County, supra, and Reynolds v. Board of Public Instruction for Dade County, supra. The sole question with which the Court is concerned is whether the opportunities to obtain an education provided for all the school children for whom the authorities are responsible, are substantially equal. In undertaking to arrive at a proper determination of that question the Court is called upon to consider evidence as to the courses offered and the buildings, laboratory equipment, library facilities and other related elements provided by the school authorities.

Upon a consideration of all the evidence introduced pertaining to the school system in King George County, it is clear that the opportunities afforded the colored children are not substantially equal to those furnished the white children. The testimony of the Division Superintendent, Mr. Gayle, one of the defendants, is significant. In response to a question by counsel he stated in substance that it has been generally felt and believed that the types

of instruction offered the two races were given with the view of equipping white and colored children for different types of future employment.

It should be added that in elaborating upon that statement he apparently indicated a realization that such position is untenable.

A declaratory judgment will be entered and an injunction granted in this case in accordance with the views here expressed.

Alice Lorraine Ashley, an infant, by A. W. Ashley, her father and next friend, et al. v. School Board of Gloucester County, Virginia, and J. Walter Kenny, Division Superintendent—Newport News Civil Action No. 175

As before stated, the allegations of the complaint filed in this action closely resemble those in the King George case. In discussing the factual situation attention will be first given to those allegations which are not sufficiently supported by evidence to require much discussion.

While there is evidence to the effect that some of the colored children are required to stand on the bus while going to and from school, this situation appears to prevail also in the case of the white children. The same observation applies with respect to heat in the school buses generally. It appears that they are about uniformly heated and while it may be true that the bus service in the county is not altogether adequate it must be remembered that this is not the issue before the court. The only issue here is whether equal facilities are provided. It appears that the bus service furnished the children of both races is approximately equal.

There is an allegation to the effect that the colored children are discriminated against by being furnished teachers and principals with less qualifications than those furnished white children due to smaller salaries and a greater turnover among the colored teachers due to unsafe and unhealthy working conditions. As in the King George case, the question here is not whether the teachers are being discriminated against in the matter of salaries since the question of salary is only in-cidental in this connection as is the allegation concerning unsafe, unhealthy and unfavorable working conditions. The evidence does not disclose that the colored teachers and principals in Gloucester County are less qualified to discharge their duties than the white teachers and I find no discrimination between the races upon that point.

Turning to the other matters of alleged discrimination, it would appear that while the factual situation is not identical, to a marked degree, the same situation exists in Gloucester County with respect to school buildings, heating facilities and equipment as exists in King George County. In some particulars the inequalities appear less pronounced but at the same time substantial.

There are seven colored schools in Gloucester County as compared with four white schools. It would seem that some of the colored schools compare favorably with some of those provided for the white children. For example, Severn school provided for white children seems to be fairly comparable to Bena-Hays colored school. The Court does not undertake to compare all the characteristics of the two sets of schools but in dealing with the over all situation presented, it is obvious that the buildings, equipment, facilities and sites furnished the colored children are substantially inferior to those furnished the white children. Again using the valuation of properties as one of the measures of comparison, it appears that for the years 1943 to 1947, inclusive, the value of buildings furnished white children has been at least twice the value of those provided for colored children, and for the greater portion of the time the valuation of the former has been considerably more than twice that of the latter. The school attendance for those years follows:

1943-44 — white 1300; colored 723;
1944-45 — white 1241; colored 817;
1945-46 — white 1259; colored 690;
1946-47 — white 1275; colored 704.

In this connection the fact that there are seven colored schools and only four white schools becomes significant. In arriving at a valuation of buildings consider-

ation necessarily is given to type of construction, heat and plumbing installations, laboratory facilities, recreational facilities and other related matters. This is rather forcefully illustrated in the interior and exterior views portrayed by photographs filed as exhibits.

Of interest also is the per capita cost of instruction of the two principal white schools, Achilles and Botetourt, as compared with such cost of operating the Gloucester Training School, which is the principal school operated for colored children. From 1943 to 1946, inclusive, the average annual cost was as follows:

| Achilles | | Botetourt | | Gloucester Training | |
|---|---|---|---|---|---|
| High | Elementary | High | Elementary | High | Elementary |
| $80.14 | $39.58 | $81.63 | $43.08 | $51.49 | $22.78 |

With respect to Library, laboratory equipment and furniture and fixtures, the situation is again quite similar to that in King George and it is obvious that that furnished the white schools is superior to that in the colored schools.

Considering the evidence as a whole and without undertaking to further enlarge upon it in this memorandum, I am led to the conclusion that there is discrimination against the colored children by the school authorities for Gloucester County in the particulars here enumerated.

A declaratory judgment and injunction in accordance with the views here expressed will be entered.

I desire to make it clear that the Court is not undertaking to supervise or direct the proper authorities with respect to what steps must be taken to eliminate the discrimination. The scope of this opinion is limited by the authority of the Court to find from the evidence and legal principles applicable whether unlawful discrimination exists and whether the plaintiffs are entitled to injunctions against its continuance.

I am aware of the familiar contention that the financial difficulties facing the counties in their efforts to equalize facilities and opportunities for the races are so great as to raise a doubt as to their

ability to do so; and that the greater portion of the tax burden falls upon the white population. While I am not unmindful of the practical problems presented, a superficial consideration of these suggestions is sufficient to bring a realization that under the prevailing law neither has any bearing upon the legal and factual questions here involved.

It is intended that the findings of fact and conclusions of law here expressed be in compliance with Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A., but it is suggested that counsel in each case prepare and submit separate and more explicit suggested findings of fact, if they so desire, along with drafts of proposed orders to be entered in each case.

**Supplemental Findings of Fact (Freeman v. County School Board of Chesterfield County)**

(1) The individual plaintiffs are citizens of the United States and of the State of Virginia, and at the time of the filing of this complaint were duly and regularly appointed and qualified school teachers in Chesterfield County, Virginia. The plaintiff, Chesterfield County Teachers Association is a voluntary unincorporated association composed of colored teachers and principals in the public schools of Chesterfield County, Virginia, organized for the improvement and protection of its members.

(2) Defendant, County School Board of Chesterfield County, is an administrative division of the State of Virginia, declared by law to be a body corporate and has control and supervision over the public schools in that county, including the employment of teachers and the fixing of their salaries. Defendant, E. S. H. Greene, is and for a number of years has been, Division Superintendent of Schools in said county, is an administrative officer of the School Board and in his official capacity recommends to the School Board the ap-

pointment of all teachers in the county and their rate of pay. Ordinarily the Board adopts his recommendation.

(3) With the exception of the school term 1942–43, since the term 1938–39 through the term 1944–45, every white elementary school teacher in the county received a salary higher than any colored elementary school teacher.

(4) For the school term 1942–43 and the term 1945–46, no white elementary school teacher received a salary lower than the highest salary paid any colored elementary teacher.

(5) For each year from 1938–39 through 1945–46, no colored elementary teacher received a salary higher than the lowest salary paid any white elementary teacher. For the year 1946–47, only 12½ percent of the colored elementary teachers were drawing salaries of not less than $1500.00, and 91 percent of white elementary teachers received salaries of $1500.00 or more.

(6) For the year 1946–47, 88 percent of the white elementary teachers received salaries higher than any colored elementary teacher. 9 percent of the white elementary teachers received salaries less than the maximum salary paid colored teachers. One white teacher was paid a salary less than the minimum salary paid any colored teacher. The 9 percent of the white teachers receiving salaries less than the maximum paid colored teachers represents 8 of 94 teachers. Only 3 of the 8 had more than 2 years' experience and only 1 had taught in the county for more than 2 years.

(7) For the year 1943–44, 39 percent of the colored teachers of the county held collegiate degrees and 35 percent of the white teachers held such degrees. From 1945–46, 52 percent of the colored elementary teachers held degrees and 27 percent of the white elementary teachers held comparable degrees. For the year 1946–47, 52 percent of the colored elementary teachers held collegiate degrees and 29 percent of the white elementary teachers held such degrees.

(8) For the year 1947–48 the salaries of the colored elementary teachers ranged between $170.00 per month and $190.00 per month, one colored teacher receiving $170.-00 and two colored elementary teachers receiving $190.00 per month.

(9) In 1938-39 the highest salary paid colored elementary principals was $500.00 per year, and the minimum paid white elementary teachers was $950.00. In 1946–47 the maximum salary paid colored elementary principals was $1575.00, and the lowest salary paid white elementary principals was $1775.00.

(10) Between the years 1938–39 and 1946–47 no colored elementary principal received a salary equal to that of the lowest paid white elementary principal. During those years, with the exception of 1942–43, 1943–44 and 1946–47, no white elementary *teacher* received a salary lower than the highest salary paid any colored elementary *principal*. In 1946–47, 9 percent of the white elementary *teachers* received salaries lower than the highest salary paid any colored elementary *principal*. For 1942–43 and 1943–44, 3 percent of the white elementary *teachers* received salaries lower than the highest salary paid colored elementary *principals*.

(11) During the year 1946–47 the highest salary paid any colored high school teacher was $1675.00. During that year the highest salary paid any white high school teacher was $2500.00, and 45 percent of all the white high school teachers received salaries equal to or more than the highest salary paid any colored high school teacher.

(12) For the year 1946–47 the average experience of colored high school teachers in the county was 14 years. The average experience of white high school teachers was 7 years. The average experience of white high school teachers receiving salaries higher than the maximum paid any colored teacher was 12 years, and the average experience of white teachers receiving salaries within the same range as the colored teachers was 4 years. During the same year all white high school teachers with more than 4 years' experience in the county received salaries higher than the maximum paid any colored high school teacher.

(13) During the year 1946–47 there were employed in the county a total of 44 col-

ored teachers and 145 white teachers, including principals.

(14) The population of white school children in the county is approximately 4 times as many as the colored children. Separate schools are maintained for the white and colored children.

(15) The senior teacher in each school is listed as the principal irrespective of the number of teachers assigned to the school. In those schools having only one teacher, such teacher is listed as principal.

(16) For 1938–39, after the filing of this action, the colored teachers and principals in Chesterfield County were discriminated against by the defendants in the payment of salaries, on account of their race and color.

### Conclusions of Law

(1) The Court has jurisdiction of the parties to this action and the subject matter thereof.

(2) The practice, policy, custom and usage of the defendants in paying the plaintiffs and other colored school teachers in Chesterfield County, Virginia, on account of their race and color, less salaries than those paid white teachers in the county, similarly situated, with substantially comparable qualifications and experience, violates the Constitution and Laws of the United States.

(3) The plaintiffs and other colored school teachers in Chesterfield County, Virginia, have been discriminated against by being paid less salaries on account of their race and color than white school teachers, similarly situated, and with comparable qualifications and experience.

(4) The plaintiffs are entitled to an order enjoining the further continuance of such discrimination.

(5) The costs of this action should be taxed against the defendant.

### Supplemental Findings of Fact
(Ashley v. School Board
of Gloucester County)

1. Plaintiffs are citizens of the United States, of the State of Virginia, and reside in Gloucester County. They are members of the Negro race. Infant plaintiffs are entitled to be educated in the public schools of Gloucester County.

2. Defendant, School Board of Gloucester County, is a sub-division of the State of Virginia, a body corporate and is charged with the obligation and duty of providing free public education for all children of school age of Gloucester County. Defendant, J. Walter Kenny, is the Division Superintendent and executive officer of said school board, and is charged by law with carrying out and effectuating the policies of said school board.

3. For a long period of time defendants had established and maintained, and at the present time are maintaining, for the education of white children in said County, four schools, two of which are known as the Botetourt and Achilles, and are high schools. The daily average in the two white high schools for 1946–47 was 294, and for the year 1947–48, 326. The Botetourt and Achilles schools are equipped with central heating plants.

4. The Botetourt school is located at the county seat and within the only sanitary district of the county. In the way of construction, location, teaching, library and janitorial personnel, library, laboratory equipment, gymnasium and auditorium facilities, it is superior to any of the other schools in the county.

5. In both the Botetourt and Achilles schools commercial, scientific and vocational studies are provided.

6. During the time mentioned defendants have established and maintained, and are maintaining one high school, namely, the Gloucester Training School, for the education of colored children. This school is centrally located and during the school years 1946 and 1947 had an enrollment of 153 students. For 1947–48 the enrollment was 135. The only courses provided which might be considered commercial, scientific or vocational are agricultural and shop work. There is no library and the laboratory and other equipment, including gymnasium and auditorium, are not substantially equal to that provided in either of the white high schools. No courses in shorthand, typing and science have been provid-

ed until the present school session. There is no central heating.

7. The elementary schools in the county consist of two for white children and five for colored children. None of these schools can be compared with the high schools in respect of either buildings, equipment or other facilities. Some of the elementary schools provided for colored children are substantially equal to those provided for white children. Some provided for colored children are not substantially equal to those provided for white children.

8. During the past four years the total valuation of the school property used for white children has ranged from two to three times as much as that provided for colored children, being as follows:

|  | White | Colored |
|---|---|---|
| 1943–44 | $100,000.00 | $50,000.00 |
| 1944–45 | 98,000.00 | 43,000.00 |
| 1945–46 | 99,000.00 | 37,000.00 |
| 1946–47 | 99,000.00 | 37,000.00 |

The following shows a comparison of the valuation of the school furniture:

|  | White | Colored |
|---|---|---|
| 1943–44 | $10,000.00 | $4,000.00 |
| 1944–45 | 10,000.00 | 4,000.00 |
| 1945–46 | 10,000.00 | 4,000.00 |
| 1946–47 | 10,500.00 | 4,000.00 |

9. The school buildings, equipment, facilities, libraries, laboratories, courses of study and recreational equipment provided by the defendants for the colored school children are not substantially equal to those provided by the defendants for white school children in Gloucester County. The failure of the defendants to provide the colored children of Gloucester County with educational opportunities and facilities substantially equal to those provided for white children of the county constitutes discrimination on account of the race and color of the colored children.

## Conclusions of Law

1. The Court has jurisdiction of the parties to this action and the subject matter thereof.

2. The practice, policy, custom and usage of the defendants in failing to provide in Gloucester County for colored school children educational opportunities and facilities substantially equal to that provided for the white school children of the county violates the Constitution and laws of the United States.

3. Plaintiffs and all other colored school children in Gloucester County, Virginia, have been discriminated against in their educational opportunities because of their race and color, and are entitled to an order enjoining the further continuance of the same.

4. The costs of this action should be taxed against the defendants.