**Delitha A. WEST**

v.

**BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY and William S. Schmidt, County Superintendent of Schools.**

**Civ. No. 8679.**

United States District Court
D. Maryland.

Sept. 16, 1958.

Robert B. Watts and Tucker R. Dearing, Baltimore, Md., for plaintiff.

John D. Gilmore, Jr., and Edward W. Nylen, Hyattsville, Md., for defendants.

THOMSEN, Chief Judge.

Plaintiff, a Negro school teacher in Prince George's County, Maryland, has sued the County Board of Education and the County Superintendent of Schools, claiming that as a result of discrimination between white and Negro teachers over the years since she began teaching in 1924 she has been receiving less salary than she should have received. She seeks: a decree declaring that the alleged discrimination violates the equal protection and the due process clauses of the Fourteenth Amendment; a declaration that the alleged discrimination violates R. S. §§ 1977, 1979, 42 U.S.C.A. §§ 1981 and 1983, formerly 8 U.S.C.A. §§ 41 and 43; an injunction restraining defendants from making any distinction solely on the grounds of race or color in the fixing of salaries; $15,600 back salary; $50,000 for mental pain and suffering; and $100,000 as punitive damages.

Defendants deny that they have discriminated between white and colored teachers since the adoption of a uniform salary scale in 1940. Defendants also raise as defenses: limitations; laches; failure to comply with the notice requirements of Art. 57, sec. 18 of the Maryland Code[1]; and failure to exhaust administrative remedies.

Plaintiff has been teaching in the public schools of Prince George's County since 1924. During the entire period from 1924 until this action was filed in February, 1956, she was a principal in charge of a small school; she was therefore entitled to receive and did receive an additional annual salary of some $200 to $500. She has taken many college grade courses, but has never received a degree.

The State Board of Education issues and has issued over the years various types of certificates to teachers. During all material times plaintiff has held either a first grade certificate or an advanced first grade certificate, both of which would entitle her to move up step by step on the salary schedule for teachers without degrees, provided she was rated first class by the county superintendent pursuant to sec. 100 of Art. 77. That section reads, and has read since 1916:

---

[1.] Unless otherwise indicated all code references are to the 1951 edition of Flack's Annotated Code of Maryland.

"Teachers' certificates shall be of two classes: first class and second class. All teachers' certificates issued by the state superintendent of schools shall, when issued, be of the second class, and shall be subject to classification by the county superintendent. The certificates of all the teachers employed shall be classified by the county superintendent, not less than once in two years. In determining the class of the certificate of a particular teacher, the following points are to be considered: (a) Scholarship; (b) executive ability; (c) personality, and (d) teaching power. The county superintendent may add such other requirements as are approved by the superintendent of public education. The county superintendent shall keep a record of the kind, grade and class of certificate held by each teacher employed in the county, and on or before the first day of October each year, he shall submit to the county board of education a list of all the teachers employed, together with the kind, grade and class of their certificates, and a copy of this report shall be transmitted to the state superintendent of schools."

Before the Act of 1941, ch. 515, was adopted, Sec. 100 applied only to white teachers. A separate salary scale was provided for colored teachers, which was below the salary scale provided for white teachers and did not require a rating of colored teachers as either first or second class, Code 1939, Art. 77, §§ 194, 195. This arrangement was declared unconstitutional by Judge Chesnut in Mills v. Board of Education of Anne Arundel County, D.C.D.Md., November 22, 1939, 30 F.Supp. 245. Following that decision, a new uniform salary scale was pre-

scribed by the Act of 1941, ch. 515, and subsequent statutes.[2] See Code, Art. 77, sec. 102.

To carry out the new policy, the supervisors of colored schools were asked to recommend to the county superintendents which colored teachers should be rated first class, which second class, and which third class (to be dropped). The County Superintendent for Prince George's County was given authority to allow up to eight years credit for past "successful" experience to all teachers who were rated first class in 1940.

The supervisors of colored schools from all over the State met and prepared a list of the "elements" they felt should be considered in rating colored teachers. This list contained more items than Sec. 100, but it is doubtful whether any "element" in the list was not fairly embraced by the four criteria specified in Sec. 100, quoted above. There is no evidence that the items in the list were approved as additional requirements by the State Superintendent of Public Education, but use of the list was approved by the County Superintendent for Prince George's County. I accept the testimony of the County Supervisor of Colored Schools, himself a Negro, that the list was prepared to help Negro teachers understand the points which the supervisors would consider, and not in an effort to set up a different set of hurdles for Negro teachers from those provided for white teachers.

The Supervisor of Colored Schools for Prince George's County recommended about thirty out of ninety colored teachers in that county for first class rating. The Superintendent, however, rated only eleven of those colored teachers first class; he allowed each of those eleven credits for eight years past successful experience. The Supervisor recommend-

2. New minimum salary schedules were adopted by the General Assembly by the Acts of 1945, ch. 543, Acts of 1947, ch. 535, Acts of 1953, ch. 263, and Acts of 1955, ch. 380. Since this suit was filed, a new statute known as the Acts of 1958, ch. 1, Code 1957, art. 77, § 106, has been passed over the Governor's veto. It is not necessary to go into the details of these statutes beyond saying that they all give credit for varying amounts of training and for "successful" experience, i. e. first class rating.

ed in July, 1940, that plaintiff be rated second class, and she was so rated by the then County Superintendent.

During the years 1940 to 1943, inclusive, there was discrimination against colored teachers in the matter of first class ratings. After Mr. Shugart became County Superintendent in 1944, he inaugurated a policy of increasing as fast as he considered practicable the number of Negroes receiving first class ratings. For the first few years he gave such ratings to the older teachers so that they would receive greater benefits upon retirement. By 1949, 65% of all Negro teachers with at least one year's experience had received first class ratings; by 1953, when the defendant Schmidt had been County Superintendent for one year, only one such Negro teacher was rated second class.

At the present time, because of the increase in size of the county school system, the teachers are rated by their respective principals. Everyone of the more than two hundred Negro teachers with at least one year's experience is rated first class, while fifty-three such white teachers are rated second class.

■ After each school year ending in 1940 to 1948, inclusive, plaintiff was rated second class by the successive county superintendents. I find as a fact, however, that the failure of plaintiff to receive a first class rating during the years 1940 to 1948, inclusive, was not due to prejudice against Negroes but was due primarily to the fact that neither the Negro Supervisor of Colored Schools in Prince George's County nor the white State Supervisor of Colored Schools believed that she met the requirements for a first class teacher, as set out in Sec. 100.

At the end of the 1948–49 school year, plaintiff was rated first class, and has been rated first class ever since, moving up the salary scale step by step since that time; but, until now, she has been on a lower step than she would have been had she been rated first class before July, 1949. For the year 1958–59, however, plaintiff will be on the highest step ($5,200) of the salary schedule for teachers without degrees.

Nicholas Orem, who was Superintendent of Schools for Prince George's County from 1921 until 1943, G. Gardner Shugart, who held that office from 1943 to 1951, and J. Walter Huffington, who was State Supervisor of Colored Schools during most of the 1940s, all died before this suit was instituted.

■ *1. Plaintiff's prayers for a declaratory decree.*

It is true, of course, that discrimination by the state or by county school officials between white and colored teachers on account of race or color violates the Fourteenth Amendment and 42 U.S.C.A. § 1981. But it does not follow that because positions are equivalent the particular persons filling them are necessarily equal in professional attainments and efficiency; some range of discretion in determining actual salaries for particular teachers is permissible, so long as the distinction is not made on a proscribed basis. Mills v. Board of Education of Anne Arundel County, 30 F. Supp. at page 249.

*2. Plaintiff's claim for back salary.*

There was discrimination against all colored teachers, including plaintiff, before 1940. The state law did permit them to be rated first class. Colored teachers were rated for the first time in the summer of 1940, and plaintiff was rated second class. I have found as a fact that the reason plaintiff was rated second class rather than first class during the years 1940 to 1948, inclusive, was not because of her race or color, but because her supervisors and her superintendent did not believe she was entitled to a first class rating under Sec. 100 during those years. So, even though there may have been some discrimination against Negro teachers generally during some or all of the years 1940 to 1948, which injured some Negro teachers, plaintiff herself suffered no injury therefrom.

It is true that during all school years from 1924–25 to 1957–58 plaintiff has received less salary than she would have received if she had been rated first class during the years before 1940 when colored teachers were not rated. Plaintiff did not show that she would have been or should have been rated first class during any of the years before 1940; it would be impossible for her to show that at this time, or for defendants to show the contrary. She has accepted each year the contracts which were offered her by the County Board, although she and her legal counsel discussed the claim for a higher salary with various school officials on a number of occasions. But even if it should be held that she received a legal injury or a series of legal injuries during the years before 1940, which prevented her from receiving the salary to which she would otherwise have been entitled during all subsequent years up to 1957–58, such *injuries* occurred before 1940, although the alleged *damages*—lower salary, mental pain and suffering—continued over the years before and after 1940.

The time for filing an action under the Federal Civil Rights Act is controlled by the applicable state statute of limitations. Wilson v. Hinman, 10 Cir., 172 F.2d 914, certiorari denied 336 U.S. 970, 69 S.Ct. 933, 93 L.Ed. 1121, rehearing denied 337 U.S. 927, 69 S.Ct. 1164, 93 L.Ed. 1735 rehearing denied 338 U.S. 953, 70 S.Ct. 478, 94 L.Ed. 588. I cannot reconcile the Maryland cases on the question whether the three year statute or the twelve year statute applies. The tangled reasoning on this subject by some of the late, respected judges has produced a knot of such proportions that a modern Alexander is needed. See analysis of Maryland cases in Roland Electric Co. v. Black, 4 Cir., 163 F.2d 417, 6 A.L.R.2d 82.

But whether the three year statute or the twelve year statute applies, plaintiff's claim for back salary is barred. Any failure to rate plaintiff first class because of her race or color occurred before 1940 or 1941; she knew of her injury not later than 1939, when the Mills case was decided; she began to sustain the alleged damages—loss of salary, mental pain and suffering—before 1940. Her right of action for these injuries accrued before 1940. This court must follow the Maryland decisions; and there can be no question but that, under those decisions, the period of limitations runs from the time when the wrong is committed and the cause of action accrues. Hahn v. Claybrook, 130 Md. 179, 182, 100 A. 83, L.R.A.1917C, 1169; Washington B. & A. Elec. R. R. Co. v. Moss, 130 Md. 198, 204–205, 100 A. 86; Callahan v. Clemens, 184 Md. 520, 527, 41 A.2d 473. See also Easter v. Dundalk Holding Co., 199 Md. 324, 327, 328, 86 A.2d 477. In this respect, the Maryland law is in accord with the general law. Pickett v. Aglinsky, 4 Cir., 110 F.2d 628, 630.

Moreover, plaintiff's claim for back salary in this case is barred by her failure to comply with the requirements of Art. 57, sec. 18.[3]

For any error by the County Superintendent in rating plaintiff second class during the years 1940–48, plaintiff's remedy was by appeal to the State Board of Education. Art. 77, sec. 144. Robinson v. Board of Education of St. Mary's County, D.C.D.Md., 143 F.Supp. 481, and cases cited therein.

3. "No action shall be maintained and no claim shall be allowed against any county or municipal corporation of Maryland, for unliquidated damages for any injury or damage to person or property unless, within ninety days after the injury or damage was sustained, written notice thereof setting forth the time, place and cause of the alleged damage, loss, injury or death shall be presented either in person or by registered mail by the claimant, his agent or attorney, or, in case of death, by his executor or administrator, to the City Solicitor of Baltimore City, the County Commissioners, or the corporate authorities of the municipal corporation, as the case may be. The provisions of this section shall only apply to Caroline, Montgomery and Prince George's Counties."

**3.** *Plaintiff's claim for damages for mental pain and suffering and for punitive damages.*

*A fortiori*, these claims are barred by Art. 57, secs. 1, 3 and 18.

**4.** *Plaintiff's prayer for an injunction.*

It appears that plaintiff will receive during the coming school year the highest salary which a teacher in Prince George's County without a degree can receive under the present salary schedule. There is no evidence of any present discrimination against Negro teachers in Prince George's County. Every Negro teacher is now rated first class by her principal. There is no need for any injunction.

The complaint is hereby dismissed, with costs.