# WILLIAM KELSO WHITE

*vs.*

# SAFE DEPOSIT & TRUST COMPANY, Executor.

*Survival of Actions—Personal Injuries—Alienation of Affections.*

Code, art. 75, sec. 25, providing that certain named classes of actions shall not abate by the death of either or any of the parties to such action, applies only to actions already instituted in the lifetime of the alleged wrongdoer.　　　　p. 596

Code, art. 75, sec. 26, providing that no action brought to recover damages for injuries to the person caused by negligence or default shall abate by reason of the death of the plaintiff, applies only to the case of an action already instituted.

p. 597

An action on account of the alienation of a wife's affections is an action for injuries to the person, within the exception in Code, art. 93, sec. 104, providing that executors and administrators may be sued "in any action (except for slander and injuries to the person) which might have been maintained against the deceased."　　　　p. 597

*Decided March 3rd, 1922.*

Appeal from the Baltimore City Court (Soper, C. J.).

Action by William Kelso White against the Safe Deposit and Trust Company of Baltimore, executor of William A. Marburg, of A., deceased. From a judgment for defendant, plaintiff appeals. Affirmed.

The cause was argued before Boyd, C. J., Briscoe, Thomas, Pattison, Urner, Stockbridge, Adkins, and Offutt, JJ.

*Laurie H. Riggs,* with whom was *J. Marsh Malthews* on the brief, for the appellant.

An action on account of an injury to one's feelings or reputation is not an action for injury to the person within the

meaning of the statute providing that such actions shall not survive. *Ward.* v. *Blackwood,* 41 Ark. 295; *Davis* v. *Railway,* 53 Ark. 117; *Davis* v. *Nichols,* 54 Ark. 358; *Billingsly* v. *St. Louis, etc., Ry. Co.,* 84 Ark. 617; *Powers* v. *Sumbler,* 83 Kan. 1; *Cutting* v. *Tower,* 14 Gray (Mass.) 183; *Norton* v. *Sewall,* 106 Mass. 143; *Walters* v. *Nettleton,* 5 Cush. (Mass.) 346; *Cummings* v. *Denhart,* 5 Cush. (Mass.) 543; *Smith* v. *Sherman,* 4 Cush. (Mass.) 408; *Dixon* v. *Amerman,* 181 Mass. 430; *Young* v. *Aylesworth,* 35 R. I. 259; *Taylor* v. *Bliss,* 26 R. I. 16; *Denslow* v. *Hutchinson,* 152 Ill. App. 502; *Bassett* v. *Bassett,* 20 Ill. App. 543; *Pinkerton* v. *Gilbert,* 22 Ill. App. 502; *Wagner* v. *Lathers,* 26 Wis. 436; *Lehman* v. *Farwell,* 95 Wis. 185; *Sunanday* v. *McKently,* 244 Pa. 533; *Boyd* v. *Snyder,* 207 Pa. 330; *Tomlin* v. *Hildreth,* 65 N. J. L. 438, 446; *Hodge* v. *Wetzler,* 69 N. J. L. 490; *Williams* v. *Williams,* 20 Colo. 51, 57; *Justice* v. *Klinard,* 142 Tenn. 208; *C.* v. *D.* (1905), 10 Ont. L. Rep. 641.

*George Weems Williams* and *Wallis Giffen,* for the appellee.

An action for alienation of affections, or for other injury to one's feelings, is one for injuries to the person within the statute. *Garrison* v. *Burden,* 40 Ala. 515; *Tinker* v. *Caldwell,* 193 U. S. 473; *Delamater* v. *Russell,* 4 How. Prac. (N. Y.) 234; *Straus* v. *Schwarzwaelden,* 4 Bosw. (N. Y. Super. Ct.) 627; *Bedan* v. *Turney,* 99 Cal. 653; *Hoover* v. *Palmer,* 80 N. C. 313; *Hood* v. *Sudderth,* 111 N. C. 215, 218; *Hutcherson* v. *Durden,* 113 Ga. 988, 994; *McDonald* v. *Brown,* 23 R. I. 546; *Hurle's Case,* 217 Mass. 223; *Madden's Case,* 222 Mass. 487; *Taylor* v. *Bliss,* 26 R. I. 16; *Williams* v. *Williams,* 20 Colo. 51, 67; *Clark* v. *Carroll,* 59 Md. 180; *Ott* v. *Kaufman,* 68 Md. 56.

Boyd, C. J., delivered the opinion of the Court.

The appellant sued the executor of William A. Marburg for alienation of the affections of his wife. There was a de-

murrer to the original declaration, which was sustained, and an amended declaration was filed, containing three counts. The first and third counts set out the allegations of the plaintiff in about the same language, except the first concludes by saying:

> "By means whereof, the said plaintiff from thence hitherto has wholly lost all the affection, comfort, fellowship, society, aid and assistance of his said wife, Louise W. White, and was and is caused to suffer great mental anguish, distress and pain, and great annoyances and suffering in his household, and was and is wholly humiliated among his neighbors, acquaintances and friends, and has been otherwise damaged." * * *

While the third concludes by alleging that:

> "By means whereof the said plaintiff from thence hitherto has wholly lost the aid and assistance of his said wife, Louise W. White, in his household, and in the rearing, education and care of his children, and has been permanently deprived of her aid and assistance in the same, and has been put to great expense in employing the services of others to attend to his household, and the care, nurture and education of his children, and has been otherwise injured and damaged in his property and estate."

The second is like the first until the last paragraph, which alleges that the plaintiff, upon the discovery of the matters set forth, was going to bring suit against the said William A. Marburg of A., but he continuously to the time of his death requested the plaintiff not to bring suit, and at all times admitted his liability and assured the plaintiff that a settlement would be made; that negotiations were begun between them, and continued up until the time of the death of the said Marburg, and were about to be completed when his death occurred, and that plaintiff, acting upon the assurance of the said Marburg that a settlement would be made, and for no other reason whatsoever, did not bring suit, believing

that said matters would be settled, but after his death his executor refused further to negotiate for settlement or to acknowledge any liability therefor.

The Baltimore City Court sustained a demurrer to the amended declaration, and to each and every count thereof, and, the plaintiff having declined to amend the declaration, judgment on the demurrer in favor of the defendant for costs was entered. From that judgment this appeal was taken.

As the appellant in his brief states that "the sole question decided by the lower court, and the only question to be decided by this Court, is whether the action survived against the executor of William A. Marburg of A.," we do not understand that any distinction between the second count and the other two is relied on in this appeal.

As such an action could not be sustained against the personal representative of a deceased person at common law, it is necessary to ascertain whether the modifications of the common law rule by the Maryland statutes sustain an action for such an alleged wrong, brought, after the death of the wrongdoer, against his personal representative. It is clear that it is not justified by the provisions of article 67 of the Code, the title of which is, "Negligence causing death," as that is a new cause of action brought in the name of the state for the benefit of the wife, husband, parent and child of a person whose death was caused by the wrongful act, neglect or default of the defendant, being what is generally spoken of as "Lord Campbell's Act," although under our statute the suit is in the name of the State, and not in that of the personal representative of the deceased.

Section 25 of article 75 of the Code provides that:

"No action of ejectment, waste, partition, dower, replevin or any personal action, including appeals from judgments rendered by justices of the peace, in any court of law in this State, shall abate by the death of either or any of the parties to such action * * * This not to apply to actions for injuries to the person, where the defendant dies, nor to actions for slander."

Section 26 of that article is that:

"No action hereafter brought to recover damages
for injuries to the person by negligence or default shall
abate by reason of the death of the plaintiff, but the
personal representatives of the deceased may be sub-
stituted as plaintiff and prosecute the suit to final
judgment and satisfaction."

Neither of them applies to this case, as there was no action
to "abate by the death of either or any of the parties to such
action," as provided in section 25; and section 26 in terms
applies only to the death of the plaintiff. They apply to ac-
tions already instituted in the lifetime of the alleged wrong-
doer. *Stewart* v. *United Electric Light & Power Co.,* 104
Md. 332, 336. But section 104 of article 93 of the Code
provides that:

"Executors and administrators shall have full power
to commence and prosecute any personal action what-
ever, at law or in equity, which the testator or intes-
tate might have commenced and prosecuted, except
actions of slander; and they shall be liable to be sued
in any court of law or equity, in any action (except
for slander and injuries to the person) which might
have been maintained against the deceased. * * *
The words 'actions for injury done to the person,'
hereinbefore used, shall not be held to embrace actions
for illegal arrest, false imprisonment or violation of
the twenty-third, twenty-sixth, thirty-first and thirty-
second articles of the Declaration of Rights, or any
of them, or of the existing or any future provisions
of the Code touching the writ of habeas corpus, or pro-
ceedings thereunder; for all of which enumerated
wrongs actions may be maintained by and against
executors as they may be or might have been by and
against the party or parties deceased."

The important question in this case, therefore, is what is
the meaning of the exception "injuries to the person" as used
in the statute. In *Stewart* v. *United Electric Light & Power*

*Co., supra,* it was for the first time determined that the administrator of a person who had been killed by the wrongful act, neglect and default of the defendant, could, by virtue of section 104 of article 93, recover damages for the suffering and losses sustained by the deceased in his lifetime, and that such suit was independent of and not affected by one brought under article 67—that neither was a substitute for the other, and that both could be maintained concurrently. CHIEF JUDGE McSHERRY reviewed the various statutes in this State which had changed or modified the common law doctrine. After referring to the Code of 1860, where the acts referred to were condensed and codified in section 1 of article 2 of that Code (now section 25 of article 75), to the Act of 1861, ch. 44, which was in section 103 of article 93 of the Code of 1904 (now section 104 of Ann. Code) and the Act of 1888, ch. 262, which added what is now section 26 of article 75, JUDGE McSHERRY said that the clause added to section 24, article 75 of the Code of 1888 by the adoption of that Code, caused " 'actions for injuries to the person, where the *defendant* dies, and actions for slander' to abate." After further consideration of the subject he said: "Whilst this legislation relates to the non-abatement of actions actually pending when the plaintiff dies, there are other statutes which concern the right of executors and administrators to sue, and which have a direct bearing on the question here involved." He then considered the statute which is now section 104 of article 93, and held that it provided for the survival of a cause of action which the deceased himself had, and in comparing that action with the one given by article 67 of the Code, he said: "The points of difference between this statute (referring to article 67) and the provisions of the Code giving to executors and administrators full power to commence and prosecute any personal action whatever, which the testator or intestate might have commenced and prosecuted (*except actions of slander and an action where the person causing the injury is dead*) are striking and marked, even upon a

casual comparison of the two enactments." What we have just italicized, and other parts of the opinion, show that in the judgment of the Court, a suit for such damages as were sought in that case could not be maintained if the person causing the injury was dead.

In *Demczuk* v. *Jenifer,* 138 Md. 488, the surviving husband sued the administrator of a person who shot and killed the wife of the plaintiff for damages resulting to him from the loss of her services as the result of her death through the wrongful act of the deceased. The question presented was whether liability for such damages survived the death of the tort-feasor, so that he could sue the personal representative, and we held that it did not, under our statute. The judgment of the lower court on a demurrer in favor of the defendant was therefore affirmed. After referring to section 25 of article 75, section 104 of article 93, and article 67, Judge Offutt, in speaking for the Court, said: "There is nothing in the language of either statute to indicate that the expression 'injuries to the person' was intended to be limited to injuries to the plaintiff, or indeed to any particular person or class of persons; but, on the contrary, it was apparently used to define and characterize the class of actions excluded from the operation of the statutes. Used in that sense, an action for 'injuries to the person' naturally means any injury causing actual physical pain, discomfort, or disability to any person, which occasions loss or damage either to such person or to any other person entitled to the benefit of the services of the injured person. While the loss of the wife's services, for which compensation is sought in this case, did not result from any personal injury to the plaintiff, it did result from a personal injury to the wife, and this is therefore 'an action for injuries to the person,' and is excluded from the operation of the statutes under consideration." Judge Offutt referred at length to *Mulvey* v. *City of Boston,* 197 Mass. 178, 14 Ann. Cas. 349, where the Supreme Court of Massachusetts adopted a similar view as

to the expression "injuries to the person," as used in a statute of limitations.

It would certainly be very remarkable if the Legislature of this State would except, from the broad language used in statutes intended to permit suits to be brought either by or against administrators, such suits as one to recover damages for personal injuries sustained, of the character referred to in the *Stewart case,* and one to recover for the loss of a wife's services, as in *Demczuk's case,* but permitted a suit such as this, for alienation of affections. Yet it is said in the *Stewart case* that recovery could not have been had if the suit had been against the personal representative of a wrongdoer, and in *Demczuk's case* it was distinctly held that there could be no recovery against the administrator. While we quoted at some length from the case of *Mulvey* v. *Boston* and concurred in the meaning that the Supreme Judicial Court of Massachusetts gave to "injuries to the person," we did not intimate or indicate that such a suit as this would not come within the exception. On the contrary, we find that in *Hurle's Case,* 217 Mass. 223, that court said: "The words 'personal injury' have been given in many connections a comprehensive definition. They are broad enough to include the husband's right to recover for damage sustained by bodily harm to his wife, the alienation of a husband's affections, the seduction of one's daughter, and other kindred tortious acts * * * They are not confined to the instances where the wrong can be described technically as trespass *vi et armis.*" In *Madden's Case,* 222 Mass. 487, 492, in defining what are personal injuries under the terms of the Workmen's Compensation Law, giving compensation for "personal injury arising out of the employment," that court said: " 'Personal injury,' standing by itself, comprehends a wide range of physical harm. Indeed, the phrase has been extended in other connections to comprise a large category of mischiefs which have a theoretical rather than corporal adjunction to the human body, and which may be intangible or mental rather than tactile and physical. It

may comprehend damage to those inherent personal rights which generally are recognized as protected by the law and as sacred as the security from bodily violence. Doubtless many decisions include among personal injuries wrongs which would not be personal injuries under the Workmen's Compensation Act. For example, the phrase 'personal injury' has been held to include even injuries to reputation resulting from libel, *Thompson* v. *Judy,* 95 C. C. A. 51-54; malicious prosecution and false imprisonment, *McChristal* v. *Glisbee,* 190 Mass. 120; invasion of the right of privacy, *Riddle* v. *McFadden,* 201 N. Y. 215; as well as alienation of the affections of a husband or wife, seduction, false arrest, and kindred tortious acts. That was pointed out in *Hurle's Case,* 217 Mass. 233, after a considerable review of the authorities. * * * These cases hold that it is not necessary to 'personal injury' that there should be a physical impact."

In *Taylor* v. *Bliss,* 26 R. I. 16, F. E. Smith was committed to jail on an execution in favor of Taylor in an action of trespass on the case for the wrongful and malicious alienation of the affections of his wife. A citation was issued by Bliss on Smith's application to take the poor debtor's oath. Taylor then filed a petition for a writ of prohibition against further proceeding under the citation. The statute allowed a citation to any person imprisoned for debt, but limited the scope of the term "debt" by providing that no person who shall be committed on execution "in any action of trover, or detinue, or for any malicious injury to the person, health or reputation of the plaintiff in such suit," shall be deemed to be within the meaning of the section of the law referred to. The court said: "We think that an action for alienation of the affection of a wife is clearly one for an injury to the person of the husband. The gist of the action is depriving him of companionship and a wounding of his feelings. As said in *McDonald* v. *Brown,* 23 R. I. 546, by TILLINGHAST, J.: 'Wounded feelings, mental anguish, loss of social position and standing, personal mortification and dishonor, are clearly injuries that pertain to the

person.' All of these things are usually attendant upon a case of alienation of affection." In *Garrison* v. *Burden,* 40 Ala. 513, in referring to a section of the code that "all actions on contracts, express or implied, all personal actions except for injuries to the person or reputation, survive in favor of and against the personal representatives," the court held that adultery or criminal conversation of a wife was, in legal contemplation, an injury to the person of the husband. The court said: "We cannot concur with the counsel for the appellant in the position that the words 'injuries to the person,' within the meaning of section 2157 of the code, are 'direct physical hurts to the body of the person and not mere injuries to his feelings, unaccompanied by bodily hurt.' "

In 1 *C. J.,* 204, under title "Abatement and Revival," par. 388, it is said: "A cause of action, or action by husband for criminal conversation with, or alienation of the affection of, his wife, being based on a tort, and the injury being personal, does not survive at common law, nor, as a rule, under the statutes. Under the statutes in some jurisdictions, however, such an action survives." See also *Tinker* v. *Colwell,* 193 U. S. 473; *Delamater* v. *Russell,* 4 How. Prac. (N. Y.) 234; *Bedan* v. *Turney,* 99 Cal. 653; *Hoover* v. *Palmer,* 80 N. C. 313; *Hood* v. *Sudderth,* 111 N. C. 215; *Hutcherson* v. *Durden,* 113 Ga. 988; *Williams* v. *Williams,* 20 Colo. 51; *Gross* v. *Ledford,* 190 Ky. 526; *Justice* v. *Klinard,* 142 Tenn. 208, where the meaning of injuries to the person has been considered in reference to various suits. Actions for criminal conversation are generally, although not universally, held to be injuries to the person.

It will be noticed, in most of the statutes passed for the purpose of changing or modifying the common law as to abatement of actions by reason of the death of parties, such an expression as "injuries to the person" is used in the body of the statute, while in ours it is used as an exception to the broad language used in authorizing suits against executors and administrators. The meaning to be given such an

expression may therefore well differ in the one case from that in another. Indeed the latter part of section 104 of article 93 may be referred to to show that it was not intended to apply merely to physical or bodily injuries, or give a narrow meaning to the words of the exception, "injuries to the person." In *Clark* v. *Carroll,* 59 Md. 180, reference was made to the fact that the Act of 1861, ch. 44, was passed at a period of great excitement, just after the beginning of the civil war, "and was intended to meet a supposed exigency for greater security against the wrongs mentioned in the act," but in 1888, when the code of that year was adopted, the Legislature again declared that "the words 'actions for injury done to the person' hereinbefore used, shall not be held to embrace actions for" the causes therein set out. If it had been intended that the exception "injuries to the person" should have such a narrow construction given it as is contended for in this case, such legislation would seem to have been unnecessary and useless, at least in 1888.

In *Clark* v. *Carroll, supra,* it was contended that the Act of 1861, ch. 44, saved that action from abating, but the Court held that it abated, and said: "Obviously it does not fall within the class of grievances which the statute of 1861 was intended to meet." The case of *Ott* v. *Kaufman,* 68 Md. 56, was quite similar to *Demczuk* v. *Jenifer, supra,* except in the former the question was whether the action had abated, while in the latter no suit had been brought. It was held that the action had abated.

There is no case in this State precisely in point, but there is none sustaining the position taken by the appellant, and we are of the opinion that the decisions elsewhere are correct, which hold that the expression "injuries to the person," or some similar phrase, in a statute of this kind, includes injuries for alienation of the affections. The action, therefore, did not survive against the executor, and without prolonging this opinion, the judgment will be affirmed.

> *Judgment affirmed, the appellant to pay the costs above and below.*