**Benjamin F. McIVER**

v.

**Glen RUSSELL, Joseph Mullin, Joseph Dalton, Milton Hipsley, Joseph Cole and Edward Eben.**

**Civ. No. 17457.**

United States District Court
D. Maryland.
Jan. 31, 1967.

Gerald A. Smith and Juanita Mitchell, Baltimore, Md., Jack Greenberg, Michael Meltsner, and Charles S. Ralston, New York City, for plaintiff.

Paul Berman and Bayard Z. Hochberg, Baltimore, Md., for defendants.

FRANK A. KAUFMAN, District Judge.

This is a civil action for recovery of damages. Plaintiff alleges that on June 20, 1964, the five defendants, police officers of Baltimore City, unlawfully, willfully, intentionally and with malice beat and struck plaintiff and without justification invaded his home, damaged and destroyed his household furnishings, and arrested him; that he was then taken from his home and transported to the Southwestern District Police Station in Baltimore where he was confined to jail and charged with disorderly conduct, resisting arrest, and assaults on two of the defendants, Officers Russell and Cole, who were the complaining officers; and that on July 14, 1964, the Grand Jury for the Criminal Court of Baltimore dismissed presentments for indictments on those charges. Defendants have moved to dismiss the complaint.

The complaint sets forth four counts, each of which is factually grounded in the above alleged incidents. The first count states an action for damages to redress deprivation of constitutional rights. Jurisdiction as to this count is

invoked under 28 U.S.C. §§ 1331, 1343(3) and (4), and 42 U.S.C. § 1988. The other three counts state common law actions for assault and battery (second count), false arrest and imprisonment (third count), and malicious prosecution (fourth count). The doctrine of pendent jurisdiction is invoked with regard to these latter three counts.

## I.

Plaintiff filed his complaint on July 14, 1966, more than one but less than three years after the alleged incident. Defendants attack the first and second counts as being barred by limitations. Plaintiff concedes that the second count, which sets forth a common law action for assault and battery, is barred by the one-year provision of the Maryland stat-ute of limitations applicable to such an action. Defendants' motion to dismiss that count is accordingly granted.

The first count states a federal statutory action for damages under 42 U.S.C. § 1983[1] for deprivation of civil rights. No federal statute provides any limitations period with regard to 42 U.S.C. § 1983. Therefore: "The time for filing an action under the Federal Civil Rights Act is controlled by the applicable state statute of limitations." West v. Board of Educ., 165 F.Supp. 382, 387 (D.Md.1958).[2] Statutory provisions applicable to the first count are found in Article 57, Section 1, of the Maryland Code.[3] The question in this case is which of the limitation periods set forth in Section 1 of Article 57 should be applied to the first count.[4] Defendants

---

1. 42 U.S.C. § 1983 reads as follows:
 "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. Here, as in the *West* case, Maryland law applies since Maryland is the state in which the cause of action arose and in which this District Court is located. Smith v. Cremins, 308 F.2d 187, 189, 98 A.L.R.2d 1154 (9th Cir. 1962), and cases cited therein at n. 9.

3. "All actions of account, actions of assumpsit, or on the case, except as here-inafter provided, actions of debt on simple contract, detinue or replevin, all actions for trespass for injuries to real or personal property, all actions for illegal arrest, false imprisonment, or *violation* of the *twenty-third*, twenty-sixth, thirty-first and thirty-second *articles of the Declaration of Rights*, or any of them, or of the existing, or any future provisions of the Code touching the writ of habeas corpus or proceedings thereunder, and all actions, whether of debt, eject-ment or of any other description whatso-ever, brought to recover rent in arrear, reserved under any form of lease, wheth-er for ninety-nine years renewable for-ever, or for a greater or lesser period, and all distraints issued to recover such rent shall be commenced, sued or issued within *three years* from the time the cause of action accrued; and all actions on the case for libel and slander and all actions of *assault, battery and wound-ing*, or any of them, within *one year* from the time the cause of action accrued." 5 Md.Ann.Code art. 57, § 1 (1964 Re-placement Vol.). (Emphasis added).

4. The only decision which deals with the Maryland limitations applicable to an action under 42 U.S.C. § 1983 appears to be West v. Board of Educ., supra. In that case a Maryland Negro school teacher, who had been teaching since 1924, filed suit under § 1983 in 1956 against the Prince George's County Board of Educa-tion and County Superintendent of Schools for back salary which she alleged was due her because until 1941 the State had maintained a salary scale for Negro teachers which was below the scale pro-vided for white teachers—a discrimina-tory classification which was declared unconstitutional in 1939 by Judge Ches-nut in Mills v. Board of Educ., 30 F.Supp. 245 (D.Md.1939). Chief Judge Thomsen of this Court was asked in the *West* case to apply either the three-year limitations period set forth in Article 57, Section 1, or the twelve-year limitations applicable to specialties [5 Md.Ann.Code art. 57, § 3 (1964 Replacement Vol.)]. In view of his holding that plaintiff's claim for back salary accrued before 1940—more than sixteen years before suit was filed— Judge Thomsen held the claim barred by limitations but found it unnecessary to

contend that the factual allegations of that count are grounded upon allegedly vicious assaults by the defendant officers; that for this reason the count is more nearly equivalent to an action of assault and battery than it is to any of the other actions referred to in Article 57; and that the count is barred by the one-year limitations provision applicable to assault and battery. Plaintiff, on the other hand, has contended that the three-year limitations period provided in Section 1 of Article 57 is applicable to the first count because that count is an action for violation of the twenty-third article of the Maryland Declaration of Rights. In addition, it can be argued that the count sounds more in illegal arrest, or false imprisonment, or malicious prosecution[5] than it does in assault and battery and that therefore the three-year limitations period of Section 1 of Article 57 is applicable.

The first count states a cause of action based upon factual allegations which sound in each of the common law torts mentioned above—that is, assault and battery, illegal arrest, false imprisonment and malicious prosecution.[6] There-

---

determine what limitations period was applicable. West v. Board of Educ., supra, 165 F.Supp. at 387. There is no mention in either the pleadings or opinion filed in that case of the Declaration of Rights provision in Section 1 of Article 57.

5. **There appear to be** no Maryland cases in which questions of limitations are raised in connection with an action for malicious prosecution. Malicious prosecution has been held, however, to be an action on the case. Turner v. Walker, 3 Gill & John. 377, 385 (Md.1831). It would therefore seem that the action of malicious prosecution is governed by the three-year limitations applicable to "all actions * * * on the case, except as hereinafter provided * * *." 5 Md.Ann. Code art. 57, § 1 (1964 Replacement Vol.). However, this Court is not required to decide that question in this case and therefore expressly will not do so, particularly in the apparent absence of a clear holding by any Maryland court.

6. In comparing the federal statutory action stated in the first count to common law tort actions, the following portions of the first count of the complaint are noted:

"2. * * * He [plaintiff] is asking for an award of damages in the amount of $305,000.00 from the defendants, jointly and severally, in that they did as detailed below, wrongfully assault, arrest, detain, and imprison Benjamin F. McIver in violation of the rights secured to him under the Constitution and Laws of the United States.
* * * * *

"6. On June 20, 1964, in the City of Baltimore, Maryland, at or about 6:00 P.M., defendants Glen Russell and Joseph Mullin began to beat and strike Benjamin F. McIver, although he had done no act justifying or provoking such assault and was standing on the lawn in front of his home at 409 Edgewood Street, in Baltimore City. Thereafter, Benjamin F. McIver was beaten and driven into his home where defendants Russell and Mullin were joined by Lt. Milton Hipsley, Lt. Joseph Dalton, Sgt. Edward Eben and Officer Joseph Cole in a brutal and savage attack on Benjamin F. McIver. The defendants and each of them beat Plaintiff about the head and face with night sticks and fists. During the assault Plaintiff's household furnishings were damaged and destroyed and the living room of his home was left in shambles. Plaintiff was thereafter formally arrested. At no time had plaintiff done any act to justify the assault, destruction of his home or the arrest. While restraining plaintiff in their individual and collective custody and transporting him to the Southwestern District police station, defendants Joseph Cole, Glen Russell and Joseph Mullin continued to beat and strike plaintiff although he was groggy, limp, helpless, and offered no resistance.

"7. Plaintiff was confined to jail and charged with disorderly conduct, resisting arrest, and assaults on police officers Glen Russell and Joseph Cole, who were also the complaining officers.

"8. July 14, 1964, the May Term Grand Jury for the Criminal Court of Baltimore dismissed presentments for indictments on all of the above charges.

"9. The acts of defendants, detailed in paragraphs 6 and 7 above, were committed unlawfully, willfully, intentionally, and with malice. They were calculated to deprive plaintiff of his right to be secure in his person, his life and his home and to be secure against unwarranted and arbitrary arrest and assaults by police officers. * * * *"

fore, if there were no reference in Section 1 of Article 57 to Article 23 of the Maryland Declaration of Rights, it would be necessary either to determine that the first count sounds more in one or certain of those common law torts than in the remaining torts and to apply to the entire first count the limitations applicable to the former tort or torts, or to split the first count into two parts and to hold that part pertaining to assault and battery barred by the one-year provision of Section 1 of Article 57 and the remainder, pertaining to illegal arrest, false imprisonment and malicious prosecution,[7] not barred because of the three-year provision of Section 1 of Article 57. In Smith v. Cremins, 308 F.2d 187, 98 A.L.R.2d 1154 (9th Cir. 1962), the Court, in a case involving a problem similar to the one encountered in this case, stated:

> According to appellees' analysis, the single cause of action under the Civil Rights Act alleged in the complaint includes three distinct causes of action under State law and calls for the application of two distinct State statutes of limitations * * *. Inconsistency and confusion would result if the single cause of action created by Congress were fragmented in accordance with analogies drawn to rights created by state law and the several differing periods of limitation applicable to each state-created right were applied to the single federal cause of action. [308 F.2d at 190].

The same problems would be present in this case if a "splitting" approach were adopted.

However, the reference in Section 1 of Article 57 to Article 23 of the Declaration of Rights makes it unnecessary either to determine in what common law tort or torts count one sounds most, or to split that count into several analagous common law torts for the purpose of determining applicable limitations. In the Court's opinion, the reference to Article 23 of the Declaration of Rights provides the most satisfactory solution to the limitations problem posed in this case.[8]

Article 23 of the Maryland Declaration of Rights provides:

> That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the Land.

The Maryland Court of Appeals has construed "Law of the Land," as those words appear in Article 23, to be synonymous with "due process of law," as that phrase is used in the Fourteenth Amendment. Oursler v. Tawes, 178 Md. 471, 483, 13 A.2d 763, 768 (1940); County Comm'rs of Anne Arundel County v. English, 182 Md. 514, 521, 35 A.2d 135, 139, 150 A.L.R. 842 (1943). The Maryland Court of Appeals has further held that in construing Article 23 "the decisions of the [United States] Supreme Court on the Fourteenth Amendment are 'practically direct authorities.'" Goldsmith v. Mead Johnson & Co., 176 Md. 682, 686–687, 7 A.2d 176, 178, 125 A.L.R. 1339 (1939); Home Utilities Co., Inc. v. Revere Copper & Brass, Inc., 209 Md. 610, 614, 122 A.2d 109, 110–111 (1956). See Niles, Maryland Constitutional Law 46–48 (1915). The United States Supreme Court has held that acts of the same general type as are charged against the defendants in this case are violative of federal due process. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); cf. Screws v. United States,

---

7. With regard to malicious prosecution, see note 5 supra.

8. No provision similar to the reference in Article 57, Section 1, to Article 23 of the Declaration of Rights has been found in the limitations statutes of other States considered by the federal courts in actions arising under 42 U.S.C. § 1983. Nor apparently has this or any other Court ever considered the applicability of the Declaration of Rights provision in the Maryland limitations statute to an action brought under 42 U.S.C. § 1983. See note 4 supra.

325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). It would therefore seem to follow that such acts, if proved, would also be violative of Article 23 of the Maryland Declaration of Rights.

There does not appear to be any Maryland statute, comparable to the federal enforcement provision set out in 42 U.S.C. § 1983, which implements private enforcement of the rights secured by Article 23 of the Declaration of Rights. Further, there appear to be no Maryland cases which have determined or even discussed whether the State constitutional rights secured by Article 23, or by any other provision of the Declaration of Rights, may be enforced in a civil action for damages in the absence of such a

statute. This is a matter which touches the roots of constitutional theory and one which remains to this day unsettled as a general proposition of constitutional law.[9]

The reference in Section 1 of Article 57 to Article 23 of the Declaration of Rights was originally included by virtue of an amendment enacted at a Special Session of the General Assembly of Maryland held at Frederick, Maryland, in the first year of the Civil War.[10] Two other enactments of that Special Session involved actions for violations of Article 23: one related to actions which might be maintained by executors and administrators[11] and the other to attach-

9. The United States Supreme Court has left undecided the question of whether "federal courts can grant money recovery for damages said to have been suffered as a result of federal officers violating the Fourth and Fifth Amendments." Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939. (1946). The District Court for the Southern District of California upon remand in that case answered this question in the negative. Bell v. Hood, 71 F.Supp. 813, 817-821 (S.D. Calif.1947). But see Nash v. Air Terminal Services, 85 F.Supp. 545, 549 (E.D. Va.1949).

10. Md.Laws Spec.Sess.1861, ch. 73, repealing' and re-enacting with changes 1 Md.Code Pub.Gen.Laws art. 57, § 1 (1860). This enactment provided three-year limitations for: "all actions for * * * violation of the twenty-first, twenty-third, twenty-eighth and twenty-ninth Articles of the Declaration of Rights * * *." The present Article 23 of the Declaration of Rights at that time appeared as Article 21 under the State Constitution then in force in Maryland. Md.Const. of 1851 Declaration of Rights art. 21. In the Constitution of 1864 certain changes, not here relevant, were made with regard to that Article, which was then re-numbered as Article 23. Md.Const. of 1864, Declaration of Rights art. 23. The number of the Article remained unchanged in the Constitution of 1867. Md.Const. of 1867, Declaration of Rights art. 23. When the Maryland Code was adopted by the Legislature in 1888, the General Assembly took into account the re-numbering of the various articles of the Declaration of Rights and

revised Section 1 of Article 57 by making the three-year limitations period applicable, as it presently is, to "all actions for * * * violation of the twenty-third, twenty-sixth, thirty-first and thirty-second articles of the Declaration of Rights * * *." 2 Md.Code Pub.Gen.Laws art. 57, § 1 (1888).

11. "CHAPTER 44. AN ACT to amend the ninety-third Article of the Code of Public General Laws, by adding thereto a section limiting the effect of the exception of actions 'for anything done to the person' made in the tenth section of said Article.
"Section 1. *Be it enacted by the General Assembly of Maryland,* That the ninety-third Article of the Code of Public General Laws, be and the same is hereby amended, by the addition of the following section:
"The words 'actions for anything done to the person' used in the one hundred and fifth section of said article, shall not be held to embrace actions for illegal arrest, false imprisonment, or violation of the twenty-first, twenty-third, twenty-eighth and twenty-ninth Articles of the Declaration of Rights or any of them, or of the existing or any future provisions of the Code, touching the writ of *habeas corpus* or proceedings thereunder; for all of which enumerated wrongs, actions may be maintained by and against executors, as they may be or might have been by and against the party or parties deceased.
"Section 2. *And be it enacted,* That this act shall go into effect from and immediately after its passage."
Md.Laws Spec.Sess.1861, ch. 44, amending 1 Md.Code Pub.Gen.Laws art. 93 (1860).

ments against non-resident and absconding debtors.[12] All three 1861 enactments clearly contemplated the existence of actions for violation of Article 23. The preamble to chapter 77 of the 1861 amendments,[13] for example, refers to "actions for wrongs affecting the personal rights of the citizen," and Section 2 of that chapter refers to "attachment on the amount of *damages* claimed in the declaration." (Emphasis added). These 1861 amendments relating to executors and administrators, and to attachments, unlike the amendment to the statute of limitations, have been repealed.[14] However, before the repeal in 1929 of the 1861 amendment relating to executors and administrators, the Maryland Court of Appeals spoke in two cases about the amendment.

In Clark v. Carroll, 59 Md. 180 (1882), the Court held that that amendment was to be given a narrow construction, stating that:

> The origin and object of the law is well understood. It was passed at a period of great excitement. The late civil war had just begun, and this Act was intended to meet a supposed exigency for greater security against the wrongs mentioned in the Act. Arbitrary arrests without judicial warrant, and imprisonment without such warrant, were so common at that period, it was thought necessary to preserve the remedy for such wrongs to the legal representatives of the party injured, and against the representatives and estate of the trespasser.

> The Act, therefore, should be construed with especial reference to the mischiefs calling it into existence, and

---

12. "CHAPTER 77. AN ACT to amend the tenth Article of the Code of Public General Laws, by adding thereto the following Sections relating to attachments against non-residents of the State and parties absconding therefrom, in certain actions for wrongs affecting the personal rights of the citizen.

"*Be it enacted by the General Assembly of Maryland,* That the tenth Article of the Code of Public General Laws, be and the same is hereby amended by the addition of the following Sections; viz.:

"Section 1. In all actions for illegal arrest, false imprisonment, or violation of the twenty-first, twenty-third, twenty-eighth and twenty-ninth Articles of the Declaration of Rights, or any of them, or of the existing or any future provisions of the Code touching the writ of *habeas corpus*, or proceedings thereunder, the plaintiff shall be entitled to the benefit of all of the provisions of this Act, in regard to attachments against the lands, tenements, goods, chattels and credits of non-resident or absconding defendants.

"Sec. 2. No warrant from a Judge or Justice of the Peace, shall be necessary in order to entitle the plaintiff, in any of the cases provided for in the preceding section, to the benefit of the remedy therein granted; but attachment on the amount of damages claimed in the declaration shall be issued upon the written order of the plaintiff or his

attorney, by the Clerk of the court in which the action shall be instituted, upon the filing of the declaration, with an affidavit by the plaintiff or his attorney or some other person, that the said action hath been instituted *bona fide*, and for a wrong actually done, as in said declaration set forth.

"Sec. 3. *And be it enacted,* That this act shall be liberally construed as a remedial act, and the provisions of this article and of all other articles of the Code applicable to the premises, shall be applied in furtherance of the remedy and without hindrance for defect of form merely; *provided, however,* that no final judgment shall be rendered in any case herein provided for, except upon inquisition found by a jury, upon proof as in cases of judgment by default in like actions.

"Sec. 4. *And be it enacted,* That this act shall take effect from and immediately after its passage."
Md.Laws Spec.Sess.1861, ch. 77, amending 1 Md.Code Pub.Gen.Laws art. 10 (1860).

13. See note 12 supra.

14. Md.Laws 1888, ch. 507, § 4, repealing Md.Laws Spec.Sess.1861, ch. 77; Md. Laws 1929, ch. 570, § 2, repealing and re-enacting 2 Md.Ann.Code art. 93, § 106 (1924) with changes which eliminated the provisions enacted in Md.Laws Spec.Sess. 1861, ch. 44.

which it was intended to redress. Being in derogation of the common law, and of the natural meaning of an already existing statute declaring the law in accordance with the common law, it ought not to be extended beyond the necessary and unavoidable meaning of the terms employed. [59 Md. at 183].

Forty years later, in White v. Safe Deposit & Trust Co., 140 Md. 593, 118 A. 77, 24 A.L.R. 482 (1922), the Court reversed the narrow approach taken in *Clark,* stating:

In *Clark* v. *Carroll,* 59 Md. 180, reference was made to the fact that the Act of 1861, ch. 44, was passed at a period of great excitement, just after the beginning of the civil war, "and was intended to meet a supposed exigency for greater security against the wrongs mentioned in the act," but in 1888, when the code of that year was adopted, the Legislature again declared that "the words 'actions for injury done to the person' hereinbefore used, shall not be held to embrace actions for" the causes therein set out. If it had been intended that the ex-

ception "injuries to the person" should have such a narrow construction given it, as is contended for in this case, such legislation would seem to have been unnecessary and useless, at least in 1888. [140 Md. at 603, 118 A. at 80].

The Court of Appeals of Maryland has apparently not commented in any case concerning the 1861 amendment to the Maryland statute of limitations. However, that amendment was re-adopted by the Maryland Legislature in 1888,[15] and has survived down to this day. Thus, in keeping with the approach taken by the Maryland Court of Appeals in the *White* case, it would seem that that amendment cannot be read in the narrow context of emergency Civil War legislation and must be taken to represent positive legislative policy with regard to the limitations applicable to cases which are concerned with violations of the rights secured by Article 23.[16]

The Maryland statute of limitations does not, as do the enactments of some of the other states, provide a limitations period for actions "upon a liability created by statute."[17] In Smith v. Cremins,

15. Md.Laws 1888, ch. 74, adopting and legalizing the Maryland Code of General Public Laws of 1888.

16. In addition to the re-adoption in 1888 of the limitations applicable to actions for violation of Article 23 of the Declaration of Rights, the Maryland Legislature in 1933 repealed and re-enacted Section 1 of Article 57 and included in that re-enactment the same limitations provisions applicable to Article 23. Md.Laws 1933, ch. 54. In 1951 Article 57, Section 1, was again repealed and the limitations applicable to actions for violation of Article 23 were again included in the re-enactment. Md.Laws 1951, ch. 679.

17. Article 57, Section 3, of the Maryland Code provides twelve-year limitations for suits upon a "speciality." The Maryland Court of Appeals has stated that "suits grounded on statutes" are "in debt on records of the highest rank * * * and hence specialties." Sterling v. Reecher, 176 Md. 567, 569, 6 A.2d 237, 238 (1939). The question of whether suits brought by Maryland employees under the federal Fair Labor Standards Act are subject to

the three-year contract suit limitations of Article 57, Section 1, or the twelve-year "specialty" limitations of Article 57, Section 3, has been considered in Roland Electrical Co. v. Black, 163 F.2d 417 (4th Cir. 1947), cert. denied, 333 U.S. 854, 68 S.Ct. 729, 92 L.Ed. 1135 (1948); Bright v. Hobbs, 56 F.Supp. 723 (D.Md. 1944); and Manhoff v. Thomsen-Ellis-Hutton Co. (Baltimore City Court, March 15, 1943) in Daily Record, Baltimore, March 17, 1943, p. 3, col. 1. The limitations applicable to suits on a "specialty" have also been construed in Taggart v. Wachter, Hoskins & Russel, Inc., 179 Md. 608, 21 A.2d 141, 141 A.L.R. 751 (1941); Sterling v. Reecher, supra; and Mattare v. Cunningham, 148 Md. 309, 129 A. 654 (1925).

While it could perhaps be argued that a suit under 42 U.S.C. § 1983 is a suit upon a "specialty" because it is a suit grounded upon a statute, this Court has found no authority holding that a suit, sounding substantially in tort (such as count one in this case) rather than substantially in contract, is a suit upon a "specialty" with-

supra, plaintiff, while protesting the arrival of Soviet Deputy Premier Mikoyan at the Los Angeles airport, allegedly was seized by defendants, Los Angeles police officers, who took tracts from plaintiff, destroyed some of them, detained plaintiff for ten minutes without arresting him and then released him without returning the undestroyed literature. Defendants did not have a search or an arrest warrant. Plaintiff brought suit under 42 U.S.C. §´ 1983. The District Court held the action was governed by the one-year period applicable to actions for assault, battery, false imprisonment and certain actions for damages for seizure of property, rather than by the three-year provision applicable to actions "upon a liability created by statute." The Circuit Court of Appeals, in reversing, commented as follows (308 F.2d at 190):

> Section 1983 of the Civil Rights Act clearly creates rights and imposes obligations different from any which would exist at common law in the

absence of statute. A given state of facts may of course give rise to a cause of action in common-law tort as well as to a cause of action under Section 1983, but the elements of the two are not the same. The elements of an action under Section 1983 are (1) the denial under color of state law (2) of a right secured by the Constitution and laws of the United States. Neither of these elements would be required to make out a cause of action in common-law tort; both might be present without creating common-law tort liability. As Mr. Justice Harlan recently suggested, "a deprivation of a constitutional right is significantly different from and more serious than a violation of a state right and therefore deserves a different remedy even though the same act may constitute both a state tort and the deprivation of a constitutional right."[18]

█ The search for state limitations to fill the gaps in federal enactments

---

in the meaning of Article 57, Section 3. In view of the conclusions reached in this opinion with regard to the three-year limitations period in Article 57, Section 1, for actions for violation of Article 23 of the Declaration of Rights, it is unnecessary to determine whether or not a suit such as that embodied in count one of the complaint in this case is governed by the twelve-year period of Article 57, Section 3, rather than the three-year period of Article 57, Section 1. Cf. West v. Board of Educ., supra, and the discussion at note 4 hereof supra.

18. In Beauregard v. Wingard, 230 F.Supp. 167, 171 (S.D.Calif.1964), the Court cited and followed Smith v. Cremins, supra, and stated that "a new cause of action in the Federal Courts was created by the Civil Rights Acts." In Wakat v. Harlib, 253 F.2d 59 (7th Cir. 1958), a federal civil rights case which is cited and discussed in Smith v. Cremins, supra, 308 F.2d at 189 n. 11, the Court considered § 15 of the Illinois statute of limitations, which provided a five-year limitations period for "all civil actions not otherwise provided for," and stated:

> "Count I relies expressly upon 42 U.S.C.A. § 1985 which creates a statutory right of action growing out of a conspiracy to impede, hinder, obstruct,

or defeat the due course of justice in any state, with the intent therein set forth. This cause of action was created by statute. It is not one of the actions enumerated in § 14 [which sets forth limitations for various common law actions, as well as for actions 'for a statutory penalty']. However the Illinois limitations act, § 15, does cover all civil actions not otherwise provided for by that act and therefore the failure to include an action under § 1985 aforesaid within § 14 does not mean that Illinois has no limitation act to bar such an action. * * * We conclude that, while the action set up in count I is covered by § 15, it is not governed by· the two-year provision in § 14 * * *." [253 F.2d at 63].

In Hoffman v. Wair, 193 F.Supp. 727 (D.Ore.1961), cited in Smith v. Cremins, supra, 308 F.2d at 189 n. 12, the Court took an approach contrary to that in the *Cremins* case, in construing the words "liability created by statute" as those words appeared in the Oregon statute of limitations. See also Wilson v. Hinman, 172 F.2d 914 (10th Cir. 1949) and Thomas v. Pick Hotels Corp., 224 F.2d 664 (10th Cir. 1955), which are likewise cited in Smith v. Cremins, supra, 318 F.2d at 189 n. 12.

such as 42 U.S.C. § 1983 is a search for analogies between federal and state law. Whenever federal courts attempt to apply state limitations to federal causes of action, what is sought are "practical solutions to a practical problem in the administration of justice." McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 229, 78 S.Ct. 1201, 1206, 2 L.Ed.2d 1272 (1958) (Brennan, J., concurring). This Court, in searching for guides in Section 1 of Article 57, concludes that since the Maryland legislature has provided a three-year limitations period for actions, which may exist from time to time, for violation of Article 23 of the Maryland Declaration of Rights, and since the Maryland Court of Appeals has held that such rights are similar to the rights secured by the Fourteenth Amendment of the Federal Constitution, and since 42 U.S.C. § 1983 was enacted to provide a cause of action for violation of rights under that federal constitutional amendment, those same three-year Maryland limitations are applicable to actions brought under 42 U.S.C. § 1983.[19]

## II.

In view of the Court's holding that the first count of the complaint is not barred by limitations, defendants' contention that pendent jurisdiction does not attach to the third and fourth counts is without merit. See Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933).

## III.

Defendants' motion to dismiss also raises certain questions involving the immunity of police officers from liability in both common-law tort actions and in actions brought under the Federal Civil Rights Act.

 Questions relating to immunities may be resolved by the Court in the context of a motion to dismiss. Johnson v. MacCoy, 278 F.2d 37 (9th Cir. 1960);

Hartline v. Clary, 141 F.Supp. 151 (E.D.S.C.1956). For the purposes of this motion "our duty * * * is to consider whether in the light most favorable to the plaintiff, and with every intendment regarded in his favor, the complaint is sufficient to constitute a valid claim." Tahir Erk v. Glen L. Martin Co., 116 F.2d 865, 869 (4th Cir. 1941). The accepted rule is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

 "There can be no doubt * * * that Congress has the power to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." Monroe v. Pape, supra, 365 U.S. at 171–172, 81 S.Ct. at 476, 5 L.Ed.2d 492. Nor can there be any doubt that Congress has in fact exercised that power with regard to actions such as the one stated in the first count. Police officers clearly cannot interpose the public nature of their employment between a federal cause of action alleging deprivation of civil rights and their potential accountability in damages therefor. Monroe v. Pape, supra; Cohen v. Norris, 300 F.2d 24 (9th Cir. 1962); Smith v. Cremins, supra; see 3 Davis, Administrative Law § 26.06 (Supp.1965). Defendants' contention that the first count fails to state a claim upon which relief may be granted is accordingly rejected.

 The question of immunity of police officers from liability for the torts stated in counts three and four was also raised in the context of defendants' motion to dismiss. Maryland law, which governs the substantive issues raised by counts three and four, is clear to the ef-

---

**19.** In so doing, this Court does not express any opinion as to whether, in the absence of Maryland enabling legislation, a cause of action for damages exists for violation of Article 23 of the Maryland Declaration of Rights.

fect that a police officer may be held civilly liable for general damages in actions for assault and battery and for false imprisonment where his acts are illegal and beyond the scope of duty. Mason v. Wrightson, 205 Md. 481, 109 A.2d 128 (1954). Punitive damages may be additionally awarded if bad faith or malice is proved. Heinze v. Murphy, 180 Md. 423, 24 A.2d 917 (1942). Although those cases did not involve actions for false arrest or for malicious prosecution, their reasoning would appear to be equally applicable to those torts. Defendants' motion to dismiss counts three and four of the complaint on the ground that those counts fail to state a claim upon which relief may be granted is therefore denied.

### IV.

Defendants contend that there is an inconsistency between plaintiff's assertion of jurisdiction under count one and the action for false imprisonment stated in the third count. The Court does not agree with that position. It is true that the jurisdiction of this Court under count one is invoked by alleging that the acts complained of were done "under color of law." It is also true that a necessary element of false imprisonment is a "detention * * * without color of legal authority." 11 Maryland Law Encyclopedia False Imprisonment § 1 (1961). Thus plaintiff may seem to be invoking jurisdiction under count one with the allegation that acts were done "under color of law" while at the same time seeking recovery under the third count with allegations that the same acts were *not* done "under color of law." There is, however, no inconsistency. The Maryland Court of Appeals has referred to false imprisonment as a detention "without color of legal authority." Dorsey v. Winters, 143 Md. 399, 410, 122 A. 257, 261 (1923). But it is apparent that what is meant by that phrase is "without legal justification." See Safeway Stores, Inc. v. Barrack, 210 Md. 168, 173, 122 A.2d 457, 460 (1956). Otherwise, police officers

would be immune from civil liability for false imprisonment owing to the fact that every action taken by them in performance of their official duties might be said to be an action taken "under color of legal authority," a position which is not in accord with the Maryland decisions. In a case involving an action for false imprisonment against a police officer who acted not only with all the authority of his office, but even under the orders of a superior officer, the Maryland Court of Appeals held that when such an officer "goes beyond the scope of the law he may become liable civilly * * *." Mason v. Wrightson, supra, 205 Md. at 487, 109 A.2d at 131. In connection with an action of false imprisonment against a police officer, "without color of legal authority" simply means that it must be shown that the defendant's actions were beyond the scope of the law. And in accordance with the specialized jurisdictional usage of "under color of law" in federal actions against state officers, it is well settled that it is entirely consistent to aver that acts were done "under color of law," in the sense that the officials were clothed with the authority of the state, and at the same time to seek to hold such officers liable for acts which were illegal under the law of the state. Ex parte Virginia, 100 U.S. 339, 346–347, 25 L.Ed. 676 (1880); Monroe v. Pape, supra, 365 U.S. at 171–172, 81 S.Ct. 473, 5 L.Ed.2d 492.

### V.

False arrest and false imprisonment are alleged by the plaintiff in the third count. Defendants assert that plaintiff should be required to distinguish between these torts. Otherwise, argue defendants, the count is vague, ambiguous and improperly multifarious. Cited in support are 35 C.J.S. False Imprisonment § 2 (1960) and 11 Maryland Law Encyclopedia False Imprisonment § 1 (1961). Reference to these authorities reveals only that some courts in jurisdictions other than Maryland have drawn a distinction between the two torts "in that a false arrest must be committed

under assumption of legal authority whereas a false imprisonment may be committed without any pretense of legal authority." 35 C.J.S. False Imprisonment § 2. It is not necessary, in the context of defendants' motion to dismiss the complaint in this case, to determine whether such a distinction would be drawn by the Maryland courts or whether such a distinction, if drawn, would be material or relevant herein. The third count of the complaint would seem clearly to meet the test of Rule 8(e)(2) of the Federal Rules of Civil Procedure which provides that "a party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses." See 2 Moore, Federal Practice ¶ 8.31 [2] (2d ed. 1965).

### VI.

In order to maintain suit for malicious prosecution, plaintiff must show that the criminal proceeding instituted or abetted by the defendants terminated in plaintiff's favor. Safeway Stores, Inc. v. Barrack, supra, 210 Md. at 173, 122 A.2d at 460. Defendants have argued that dismissal by a Grand Jury of a presentment for indictment does not constitute a "termination" of the criminal proceeding for purposes of establishing that element of the tort. The Maryland Court of Appeals, however, has indicated otherwise. In Banks v. Montgomery Ward & Co., Inc., 212 Md. 31, 38, 128 A.2d 600, 604 (1957), that Court stated:

> Criminal proceedings are terminated in favor of the accused on discharge by a magistrate at a preliminary hearing, *by the failure of the grand jury to indict* or by an acquittal. [Emphasis supplied].

### VII.

Defendants contend that the fourth count, which states a cause of action for malicious prosecution, contains no allegation that defendants instituted or continued an original criminal proceeding against the plaintiff or that there was an absence of probable cause for any proceedings. Plaintiff does not deny that these are necessary elements in the definition of the tort which must be established before recovery may be had under the fourth count. For the purposes of federal pleading, however, plaintiff would seem sufficiently to have alleged these elements in Paragraphs 7, 8 and 9 of the complaint, which in Paragraph 17 are incorporated by reference into the fourth count. See generally 2 Moore, Federal Practice ¶ 8.13 (2d ed. 1965). In these paragraphs plaintiff alleges that he was charged with certain offenses as to which defendants Russell and Cole were the complaining officers; that presentments for indictments on these charges were dismissed by the Grand Jury; and that the acts of the officers were committed "unlawfully, willfully, intentionally, and with malice." The quoted words would seem to constitute a sufficient allegation that the prosecution was without probable cause.

### VIII.

Defendants contend that they cannot plead because each of the counts of the complaint alleges different acts of wrongdoing against different defendants at different times. Proof that any such act was committed by an individual defendant could well be sufficient to entitle plaintiff to judgment against that defendant. Conversely, failure by plaintiff to prove any alleged act of wrongdoing against an individual defendant would result in a judgment in such defendant's favor. The complaint would seem clearly to meet the requirements of Rule 8(a) of the Federal Rules of Civil Procedure. Defendants' contention in this regard is therefore rejected.

### IX.

Defendants further urge that plaintiff be required to insert an *ad damnum* clause in each of the three surviving counts. Also, counts three and four are attacked as claiming duplicate damages. Paragraph 21 of the complaint states that the action is brought to recover general damages in the amount of one hundred thousand dollars, special damages in the

sum of five thousand dollars and punitive damages of two hundred thousand dollars. "Where damages are sought a statement of the overall amount demanded suffices * * *." 2 Moore, Federal Practice ¶ 8.18, at 1802 (2d ed. 1965). As to duplicate damages, it is probable that damages claimed under the several counts will overlap. Plaintiff may later, in the course of the litigation in this case, be required to apportion or particularize his claim for damages between counts, but not in an attack on his complaint as an improper pleading.

### X.

For the reasons stated, defendants' motion to dismiss is granted with regard to count 2 and is denied with regard to counts 1, 3 and 4. Counsel will prepare and submit an appropriate order giving effect to these rulings.