**Mr. Paul B. McDONALD**

v.

**Dr. Harold M. BOSLOW, Director of Patuxent Institution, et al.**

**Civ. No. 70-215-K.**

United States District Court,
D. Maryland.

June 30, 1973.

494

J. Paul Mullen, Baltimore, Md. (court-appointed), for plaintiff.

Francis B. Burch, Atty. Gen., John P. Stafford, Jr., James G. Klair, Asst. Attys. Gen., for defendants.

## MEMORANDUM AND ORDER

FRANK A. KAUFMAN, District Judge.

McDonald, who was confined in the Patuxent Institution, from July 12, 1963 until November 7, 1972, instituted, on February 25, 1970, an action for damages under 42 U.S.C. § 1983, alleging that acts committed by the several defendants during the period February, 1964 to June, 1969 violated rights guaranteed to him by the Eighth and Fourteenth Amendments to the United States Constitution. Specifically, plaintiff alleges that defendants inflicted "cruel and unusual" punishment upon him by beating him and by denying him needed medical attention.

Defendants have moved to dismiss or, in the alternative, for summary judgment, and in support thereof have filed the medical records of plaintiff during his confinement at the Patuxent Institution, and affidavits of four staff members of that institution.

■ The threshold position stated by defendants herein is that any claims relating to incidents alleged to have occurred in excess of three years prior to the commencement of this suit are barred by limitations. In McIver v. Russell, 264 F.Supp. 22 (D.Md.1967), this Court, after noting (at 25):

\* \* \* No federal statute provides any limitations period with regard to 42 U.S.C. § 1983. Therefore: "The time for filing an action under the Federal Civil Rights Act is controlled by the applicable state statute of limitations." West v. Board of Educ., 165 F.Supp. 382, 387 (D.Md.1958). \* \* \*

held (at 31–32):

The search for state limitations to fill the gaps in federal enactments such as 42 U.S.C. § 1983 is a search for analogies between federal and state law. Whenever federal courts attempt to apply state limitations to federal causes of action, what is sought are "practical solutions to a practical problem in the administration of justice." McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 229, 78 S.Ct. 1201, 1206, 2 L.Ed.2d 1272 (1958) (Brennan, J., concurring). This Court, in searching for guides in Section 1 of Article 57, concludes that since the Maryland legislature has provided a three-year limitations period for actions, which may exist from time to time, for violation of Article 23 of the Maryland Declaration of Rights, and since the Maryland Court of Appeals has held that such rights are similar to the rights secured by the Fourteenth Amendment of the

Federal Constitution, and since 42 U. S.C. § 1983 was enacted to provide a cause of action for violation of rights under that federal constitutional amendment, those same three-year Maryland limitations are applicable to actions brought under 42 U.S.C. § 1983. [Footnote omitted.]

*See* Almond v. Kent, 459 F.2d 200, 203–204 (4th Cir. 1972).

The question remains, however, as to whether the running of the limitations period as to each act complained of herein from the date of the occurrence of each such act is tolled by the provisions of Md.Ann.Code Art. 57, § 2 which provides:

> If any person entitled to any of the actions mentioned in § 1 shall be at the time such cause of action accrues within the age of one and twenty years or non compos, he or she shall be at liberty to bring the said action within the respective times so limited after the disability is removed, as other persons having no such disability might or should have done.

The tolling of the statute because of infancy is not available to McDonald, since he was born on November 13, 1944, and thus reached the age of twenty-one on November 13, 1965. Thus, even though plaintiff could seemingly have commenced a suit as late as November 13, 1968 for injuries allegedly sustained during his minority, his instant suit, commenced on February 25, 1970, cannot avoid the bar of limitations on the ground of infancy. But plaintiff contends that the limitations period set forth in Art. 57, § 1 has even today not yet begun to run against him in connection with any wrongs alleged by him in

this case because, as a "defective delinquent", he comes within the ambit of the exception provided in Art. 57, § 2 for those who are *non compos*.

■ In Maryland an individual is presumed sane until the contrary is shown by the party suggesting incapacity. Greenwade v. Greenwade, 43 Md. 313 (1875). *See also* Waple v. Hall, 248 Md. 642, 238 A.2d 544 (1968). The term "disability" as used in the applicable Maryland statutes has been held to mean " . . . the general disability of lunacy or infancy as to the care of property and the safeguarding of rights." Funk v. Wingert, 134 Md. 523, 527, 107 A. 345, 346 (1919). The former procedure for determination of lunacy was set forth in Md.Ann.Code Art. 16, §§ 132–147. Those provisions were repealed by the Acts of 1969, ch. 4, § 2 effective July 1, 1969. And *see* the provisions of Article 59 of the Annotated Code of Maryland. However, in any event, none of the former or recently enacted statutory provisions with regard to insanity are relevant to the issue presented herein. In that connection, it is to be noted that plaintiff at no time has been adjudicated to be *non compos* pursuant to the pre- or post-1969 statutory law of Maryland and that there may be some question as to whether the tolling of the limitations period will commence before adjudication that a party is *non compos*. *Cf.* Matter of Easton, Incompetent, 214 Md. 176, 180 et seq., 133 A.2d 441 (1957), *but cf.* 54 C.J.S. Limitations of Actions § 242, at p. 270. Herein, however, plaintiff contends that his commitment to the Patuxent Institution constituted an adjudication that he was *non compos* sufficient to toll the statute.[1] Md.Ann.Code art.

---

1. Plaintiff's commitment report reads, *inter alia*, as follows:

   * * * This is a severely emotionally disturbed individual, who is highly suspicious and frightened. Prominent paranoid trends are evident in the test results, and underlying schizophrenic features are present . . . due to his severe emotional unbalance, he is very unstable and his behavioral controls often prove

quite inadequate even when he is confronted with only minimal stress.

In summary, we have a very seriously emotionally disturbed individual who is highly suspicious, frightened, insecure, and who deals with this by impulsive, hostile, violently destructive anti-social behavior. It is therefore recommended that this patient be committed to Patuxent In-

31B, § 5 sets out the following criteria for commitment to Patuxent:

> For purposes of this article, a defective delinquent shall be defined as an individual who, by the demonstration of persistent aggravated anti-social or criminal behavior, evidences a propensity toward criminal activity, and who is found to have either such intellectual deficiency or emotional unbalance, or both, as to clearly demonstrate an actual danger to society so as to require such confinement and treatment, when appropriate, as may make it reasonably safe for society to terminate the confinement and treatment.

■ The core issue in this case requires comparative analyses of incompetency by reason of a mental disability on the one hand, and defective delinquency on the other hand. In Matter of Easton, 214 Md. *supra* at 186–187, 133 A.2d at 447, the Maryland Court of Appeals wrote:

> \* \* \* We think the quoted words [*i. e.,* incompetent by reason of a mental disability and *non compos mentis*] from the two sections have the same meaning. In Colegate D. Owings' Case, 1 Bland 370, 385, the Chancellor said: "Under the generic legal term, *non compos mentis,* is comprehended every species of mental derangement *which incapacitates a man from assenting to, or making a legal contract.*" In Greenwade v. Greenwade, *supra,* 43 Md. [313] at page 315, this Court held: "The term(s) *non compos mentis* used by the Code, embraces not only lunatics and idiots, but all persons of unsound mind." Again, in Purdum v. Lilly, *supra,* 182 Md. [612] at page 618, 35 A.2d 805 this Court stated, the courts "will af-

ford protection to the person and his estate where any species of mental unsoundness *is clearly shown to incapacitate him from protecting either himself or his estate against his own weakness or the artifice of others.*" We hold these are the standards of mental incapacity intended by the Legislature to invoke jurisdiction in the equity courts under both sections 132 and 135. This seems to be confirmed by Ch. 745 of the Acts of 1957, wherein provision is made for the appointment of a conservator for persons suffering from a "mental weakness (not amounting to unsoundness of mind)". [Emphases added.]

*See also* Funk v. Wingert, *supra* 134 Md. at 527, 107 A. at 346 (*non compos* is the "general disability of lunacy . . . as to the care of property and the safeguarding of rights"). In short, the purpose behind Art. 16, §§ 132–147 was, and behind Art. 57, § 2 is, the protection of those who suffer from a debilitating incapacity to such an extent as to render them incapable of caring for themselves or their property, and as to render their assent to a contract nugatory. It is to that class of individuals to which the benefit of a tolling of the statute of limitations was addressed, *i. e.,* that group of individuals whose cognitive functioning was so severely impaired as to render them incapable of husbanding a presently existing, known right.

■ A review of the purposes behind the provisions of Md.Ann.Code Art. 31B clearly indicates that it is addressed to a different group of individuals than that group of individuals covered by former Art. 16 and present Art. 59, and that commitment to Patuxent is not, in and of itself, an adjudication of *non compos* status sufficient to toll the statute. The

---

stitution under Article 31B of the Defective Delinquent Statute.

\* \* \* \* \*

*Diagnosis* :

Sociopathic personality disturbance, anti-social reaction chronic severe, with marked paranoid features. This illness is marked by very callous attitude towards

his surroundings, marked emotional immaturity, lack of sense of responsibility, frequent anti-social acts, particularly of a violent and hostile nature, marked suspicious and at times inappropriate affective behavior. [*See* p. 6 of plaintiff's Memorandum of Law, dated October 31, 1972.]

motivating purpose for the creation of the Patuxent Institution is expressly stated by Art. 31B, § 5 to be the correctional goal of confining and rehabilitating individuals who "clearly demonstrate an actual danger to society so as to require such confinement and treatment, when appropriate, as may make it reasonably safe for society to terminate the confinement and treatment." Chief Judge Hammond speaking for the Court of Appeals of Maryland in Director v. Daniels, 243 Md. 16, 30–31, 221 A.2d 397, 405, cert. denied, 385 U.S. 940, 87 S.Ct. 307, 17 L.Ed.2d 219 (1966), characterized the addressees of the legislation creating Patuxent as follows:

> Within the larger group of violators of the criminal law whose criminality is related to or results from mental abnormalities, it has long been recognized that there, in fact, exists *a smaller group who are legally sane* (under the M'Naghten, Durham or other accepted tests for sanity in criminal cases) *and therefore responsible for their acts* but who nevertheless persist in antisocial behavior, have either deficient intellect or emotional unbalance, or both, and are lacking in control. * * * [Emphasis supplied.]

As expressed by the United States Court of Appeals for the Fourth Circuit:

> * * * the statute rejects the age old concept that every legally sane person possesses in equal degree the free will to choose between doing right and doing wrong. Instead, it substitutes the concept that there is a category of legally sane persons who by reason of mental or emotional deficiencies "evidence a propensity toward criminal activity," which they are incapable of controlling. [Footnote omitted.]

Sas v. Maryland, 334 F.2d 506 (4th Cir. 1964), on remand, 295 F.Supp. 389 (D. Md.1969), aff'd sub nom. Tippett v. Maryland, 436 F.2d 1153 (4th Cir. 1971), cert. dismissed as improvidently granted sub nom. Murel v. Baltimore City Crim-

inal Court, 407 U.S. 355, 92 S.Ct. 2091, 32 L.Ed.2d 791 (1972). Thus, the statute provides for the commitment to Patuxent of those who have committed an offense against society, been found guilty thereof, *and* been found to be defective delinquents. It should be noted that interposed between the requirement of an offense against society and the determination that an individual is a defective delinquent is the requirement that he be found guilty —which mandate sufficient "sanity" for the individual to be held responsible for his acts.

Article 59, § 3(g) provides:

> *"Mental illness"* means any mental disorder, other than mental retardation, which so substantially impairs the mental or emotional functioning of an individual as to make it necessary or advisable for the welfare of the person so suffering or for the safety of the persons or property of others that the mentally ill person receive care and treatment. The term shall replace the words "insane," "insanity," "lunacy," "mentally sick," "mental disease," "unsound mind" and similar words as they appear in the statutes of the State of Maryland but does not include mental retardation.

Plaintiff argues that the above statute now provides the definition of *non compos*, and that since commitment to Patuxent indicates the necessity or advisability of treatment, of necessity commitment to Patuxent therefore, presupposes a determination of mental illness. Such an argument, although facially appealing, overlooks that part of the definition which requires that the mental disorder *itself* "so substantially impairs" the functioning of the individual as to require treatment. As Judge Harrison L. Winter, then a District Judge, noted:

> It has long been recognized that in less enlightened concepts of incompetency, the subject may be committed for life. Under Maryland law such an incompetent would have the right to seek a redetermination of his incompe-

tency, without limitation as to time or frequency.

*It does not seem unreasonable that under a lesser degree of incompetency the same result of possible incarceration for life might result when the lesser degree of incompetency is accompanied by substantial criminal conduct;* nor does it seem punitive that the right to seek a redetermination of defective delinquency should be more restricted than the case of the outright incompetent when the restriction is correlated to the sentence imposed for criminal responsibility. [Emphases supplied; footnote omitted.]

Monroe v. Director, Patuxent Institution, 227 F.Supp. 295, 302 (D.Md.), *remanded on other grounds sub nom.* Hayes v. Boslow, 336 F.2d 31 (4th Cir. 1964). Thus, the degree of incompetency required for commitment to Patuxent is a lesser degree than is normally the case because one prerequisite for commitment to Patuxent is substantial criminal conduct.

In an affidavit filed in this case, Dr. Harold M. Boslow, Director of Patuxent Institution, and a defendant herein, has affied:

\* \* \* That patients at Patuxent Institution referred pursuant to an Order for diagnosis under Article 31B, Section 6, Annotated Code of Maryland or those patients committed to the Patuxent Institution pursuant to Article 31B, Section 8, who in the course of diagnosis or treatment *show signs of being incompetent or not responsible for their actions,* then and in that event, *such patient is referred to the Clifton T. Perkins State Hospital with two physician certificates that state the patient appears to be legally incompetent or not responsible for his actions;* that Clifton T. Perkins State Hospital makes an independent examination and if it agrees with the certificates attached to the Order of Referral, then the patient is admitted to Clifton T. Perkins State Hospital until such time as he becomes competent or responsible for his actions; \* \* \*. [Emphases supplied.]

■■ It is true that the tolling of limitations is governed by federal standards, even when the applicable period of limitations is borrowed from a state limitations statute in the absence of any applicable federal limitations statute. Batchelor v. Legg & Co., 52 F.R.D. 553 (D.Md.1971); Azalea Meats, Inc. v. Muscat, 386 F.2d 5, 8 (5th Cir. 1967); Janigan v. Taylor, 344 F.2d 781, 784 (1st Cir.), cert. denied, 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965). But in this case, analyses of the provisions of Maryland's statutes and of their manner of application are obviously required. Those analyses teach that whether or not tolling standards in a case buttressed on a federal statute are to be determined by a federal court as a matter of federal law, the differences between the defective delinquency of a Patuxent inmate and a person determined to be *non compos mentis* under Maryland law are most apparent. Accordingly, this Court holds that commitment to the Patuxent Institution does not constitute an adjudication of *non compos* sufficient to toll the statute of limitations. Therefore, all claims arising out of events alleged to have occurred in excess of three years prior to the filing of the instant suit are hereby dismissed.

■ Defendants also seek dismissal, or in the alternative, summary judgment, as to the post-February 25, 1967 claims. However, this Court concludes that plaintiff's allegations that he was denied a necessary operation and that he was, on various occasions, beaten without any reason, state claims which, if proven, would warrant relief. *See* Blanks v. Cunningham, 409 F.2d 220 (4th Cir. 1969); Edwards v. Duncan, 355 F.2d 993 (4th Cir. 1966) (medical attention). Similarly, the diametrically opposed versions, of plaintiff's encounters with the guards contained in affidavits submitted by plaintiff and defendant, as well as with regard to the

necessity for the operation he seeks, forecloses the conclusion in this case at this time that there is no "genuine issue as to any material fact", Fed.R.Civ.P. 56(c), as to events which occurred after February 25, 1967. With regard to plaintiff's allegations as to certain acts which are said to have taken place after that date, trial will be calendared as promptly as possible.